MARC T. SCHRADER et al., Individually and as Parents and Natural Guardians of DAWN M. SCHRADER, an Infant, Respondent-Appellants, v ALAN J. CARNEY, Respondent, and GEORGE N. CATALANO et al., Appellants-Respondents, et al., Defendants.

Fourth Department, June 5, 1992

### APPEARANCES OF COUNSEL

*Saperston & Day, P. C. (Thomas F. Secalla* and *Kathleen A. Burr* of counsel), for Matthew Cycyk, appellant-respondent.

*Smith, Keller, Hayes & Minor (J. Michael Hayes* and *Carrie L. Smith* of counsel), for respondents-appellants.

*Grosse, Rossetti, Chelus, Herdzik & DiPasquale, P. C.,* for Allen Carney, appellant-respondent.

*Murphy & Vitch (Paul J. Murphy* of counsel), for George Catalano, appellant-respondent.

### OPINION OF THE COURT

BOOMER, J. P.

This appeal raises the question whether a cause of

action pursuant to General Obligations Law § 11-100 can be maintained against a minor. Defendant Matthew Cycyk, who was 17 years of age at the time of the accident giving rise to this litigation, appeals from a judgment entered upon a jury verdict finding him liable for the injuries of Dawn Schrader. We conclude that General Obligations Law § 11-100 does authorize a cause of action against a minor but that the judgment against Cycyk should be reversed for other reasons.

■ Defendant George Catalano also appeals from the judgment, which found him liable as the owner of the vehicle in which Dawn Schrader was a passenger when she was injured *(see,* Vehicle and Traffic Law § 388). George Catalano contends that the cause of action against him should have been dismissed because plaintiffs failed to prove that he had given permission to the driver to use his vehicle. We disagree.

■ Finally, plaintiffs appeal from so much of the judgment as reduced the gross verdict in Dawn Schrader's favor by 25% on the basis of the seat belt defense. Based upon the proof at trial, we agree with plaintiffs' contention that the seat belt defense should not have been submitted to the jury and that the judgment should not have been reduced.

I

On December 29, 1987, Dawn Schrader and her friends, Jennifer Kozak, Tina Gagna, Jody Catalano and defendant Alan Carney, drove to the Pit Stop Food Mart (Pit Stop) to buy beer. Jody Catalano was driving the automobile, which was owned by his father, defendant George Catalano. Kozak and Dawn Schrader were 16 years old; Gagna, Jody Catalano and Carney were 17 years old. In the parking lot of the Pit Stop, they encountered Matthew Cycyk, whom they knew from school. Cycyk was walking away from the store with beer that he had just purchased. Cycyk was 17 years old.

Jody Catalano asked Cycyk whether he would buy beer for them. Cycyk demurred but ultimately agreed. The teen-agers in the automobile pooled their money and gave it to Cycyk. Cycyk went into the store and later returned to the automobile with two 15-packs of beer. Cycyk gave the beer to Jody Catalano and asked the teen-agers in the automobile to join him and his friends for a bonfire in a nearby field. Jody Catalano told Cycyk that, because it was cold, they were going to get a motel room. The five teen-agers left the parking lot, leaving Cycyk behind.

At 7:30 P.M., the teen-agers arrived at the Anchor Motel on River Road in Niagara Falls. Dawn Schrader and Carney rented a room, and all five shared in the expense. During the evening, they smoked marihuana and drank the beer. At 11:00 P.M., Dawn Schrader and Carney left the room in search of cigarettes. When they could not find a cigarette machine, Dawn Schrader gave Carney the keys to the Catalano automobile and asked him to drive her to get cigarettes. Carney drove her to the Corner Store, two miles away, where they bought cigarettes. It was cold and blowing, and there were patches of snow on the road.

On the way back to the motel, Dawn Schrader fell asleep. Carney was driving. On River Road, Carney drifted onto the shoulder of the road, skidded 250 feet, lost control of the automobile and hit a utility pole while traveling at 30 miles per hour. At the scene, Carney told a Sheriff's Deputy that he had been forced off the road by an oncoming vehicle. At trial, he testified that he had been startled by a vehicle honking behind him. The Deputy testified that Carney had not appeared to be impaired or intoxicated; Carney testified that he had three cans of beer and had smoked marihuana during the evening. Others testified that he had consumed more than three cans of beer. Carney suffered only minor injuries, but Dawn Schrader suffered severe brain injuries.

Dawn Schrader and her parents, who asserted a claim for medical and other expenses incurred because of Dawn's injuries, brought this action against (1) Carney, alleging negligent operation of the automobile; (2) George Catalano, as the owner of the automobile (see, Vehicle and Traffic Law § 388); (3) Cycyk, alleging negligence and liability under General Obligations Law § 11-100; and (4) Milton Kulak and David Muscoreil, doing business as Pit Stop 441, also known as Pit Stop Food Mart, and Ronald Delp, the Pit Stop cashier, alleging negligence and Dram Shop Act liability (General Obligations Law § 11-101). The action against Pit Stop was discontinued before trial because it went into bankruptcy. The action against Delp was dismissed at the close of plaintiffs' case. The negligence cause of action against Cycyk was dismissed on stipulation of the parties.

The jury returned a verdict as follows: Carney was negligent in operating the automobile, and his negligence was a proximate cause of Dawn Schrader's injuries; Carney was impaired but not intoxicated by the consumption of alcoholic beverages at the time of the accident, and his impairment was a proxi-

mate cause of Dawn Schrader's injuries; Cycyk knowingly caused Carney's impairment by unlawfully furnishing him with alcoholic beverages with knowledge that Carney was under-age; George Catalano gave Carney permission, express or implied, to operate his automobile; Dawn Schrader was injured in the amount of $2,000,000; Dawn Schrader's failure to use a seat belt was a cause of her injuries, and her award, therefore, should be reduced by $500,000; and plaintiffs, Dawn's parents, were damaged in the amount of $86,000. Judgment was entered thereafter, and defendants Cycyk, Catalano and Carney and plaintiffs appealed. Carney, however, failed to perfect his appeal.

## II

On his appeal, Cycyk argues that General Obligations Law § 11-100 does not authorize a cause of action against a person under the age of 21 years.

General Obligations Law § 11-100 (1) provides: "Any person who shall be injured in person * * * by reason of the intoxication or impairment of ability of any person under the age of twenty-one years * * * shall have a right of action to recover actual damages against any person who knowingly causes such intoxication or impairment of ability by unlawfully furnishing to or unlawfully assisting in procuring alcoholic beverages for such person with knowledge or reasonable cause to believe that such person was under the age of twenty-one years."

As the dissent recognizes, the language of section 11-100 (1) "plainly states that 'any person' providing a minor with alcoholic beverages may be held liable." Although "any person" who is furnished with alcoholic beverages is immediately modified by the words "under the age of twenty-one years", the "any person" who furnishes the alcoholic beverages is not modified by any age limitation. The absence of the limiting language in the second instance is a strong and compelling indication that no such limitation was intended.

Generally, a statute is to be construed according to the ordinary meaning of its words and resort to extrinsic matter is inappropriate when the statutory language is unambiguous and the meaning unequivocal (*Sega v State of New York,* 60 NY2d 183, 190-191, *rearg denied sub nom. Cutway v State of New York,* 61 NY2d 670; *Riegert Apts. Corp. v Planning Bd.,* 57 NY2d 206, 209; *People v Graham,* 55 NY2d 144, 151; *New*

*Amsterdam Cas. Co. v Stecker,* 3 NY2d 1, 5-6). The limited exception to this general rule is stated in *New York State Bankers Assn. v Albright* (38 NY2d 430, 436-437). The court will disregard the plain meaning of the words used in a statute where they lead to " 'absurd or futile results' " or an " 'unreasonable one "plainly at variance with the policy of the legislation as a whole" ' " *(New York State Bankers Assn. v Albright, supra,* at 437, quoting *United States v American Trucking Assns.,* 310 US 534, 543-544). "[T]he rule that the literal language of a statute is not always controlling in the interpretation thereof is a principle to be applied with extreme caution, and only where the plain intent and purpose of the statute would otherwise be defeated" (McKinney's Cons Laws of NY, Book 1, Statutes § 111, at 230-231; *Bright Homes v Wright,* 8 NY2d 157). Where no such difficulty is present, the most compelling criterion in the interpretation of the statute is the language itself *(Anderson v Regan,* 53 NY2d 356, 362).

Without explaining the basis for its conclusion, the dissent writes that "[a]n examination of the legislative history behind General Obligations Law § 11-100, however, reveals that the Legislature intended to impose liability on adult persons who provide alcoholic beverages to, and cause the intoxication of, underage persons." My examination of the legislative history reveals no such intent. The legislative memorandum in support of the bill, when it was first introduced, stated its purpose in clear and unambiguous language (1983 NY Legis Ann, at 281-282): "The purpose of this bill is to attach civil liability to *anyone* who knowingly furnishes alcoholic beverages to any intoxicated person under the age of nineteen years, if such intoxication results in injury or damage to a third person" (emphasis added). Here, "anyone" cannot be construed to mean "any person nineteen [now twenty-one] years of age or older." No other language in the memorandum expresses any intent to limit the word "anyone" to adult persons. Elsewhere, the memorandum refers to "any individual", "every individual" and "those" who furnish alcoholic beverages to minors.

In his brief, defendant Cycyk refers to a letter found in the Governor's Bill Jacket to Laws of 1983 (ch 641) which was sent to the Governor's counsel by a sponsor of the bill after its passage. The letter recites several recent, fatal automobile accidents caused by minor drivers who were furnished alcoholic beverages by adults, and states that it was "irresponsible and illegal for an adult to furnish even one drink to an

underage person". That statement does not indicate a clear intent that responsibility under the statute be limited to adult persons. To the contrary, the sponsor's letter expressly states that the bill "provides for a cause of action against *anyone* who knowingly furnishes alcohol to underage persons" (emphasis added). Moreover, an expression of intent by one sponsor of a bill in a memorandum to the Governor after its passage is not a reliable index of the intention of the legislators who passed the bill *(Matter of Delmar Box Co.,* 309 NY 60, 67). This is especially so where the legislative memorandum submitted to the Legislature before the passage of the bill, and upon which the legislators acted, does not mention the intent of the sponsor allegedly expressed in his letter.

The imposition of liability upon persons who are less than 21 years of age is not an absurd or futile result. Historically, minors have been held responsible for their tortious conduct *(see,* Prosser and Keeton, Torts § 134, at 1071 [5th ed]). There is nothing absurd in imposing liability upon minors for furnishing intoxicating liquor to other minors where they are of such an age to appreciate the irresponsibility of their acts. A literal interpretation of the statute is reasonable and will further the intent of the Legislature, as expressed in its legislative memorandum, to control and regulate the dispensing of alcoholic beverages to minors. In the language of the legislative memorandum: "Does it really matter where the alcoholic beverage came from—the subsequent results are the same" (1983 NY Legis Ann, at 281). Alcoholic beverages can come from minors who may invite their under-age friends into their homes for parties while their parents are away and they can come from members of a college fraternity or sorority who are under 21 and who sponsor fraternity or sorority parties *(see,* 1983 NY Legis Ann, at 281 [reference in the legislative memorandum to the furnishing of alcoholic beverages at college campuses]).

Because the interpretation of General Obligations Law § 11-100 according to its plain language does not lead to absurd or futile results or to an unreasonable result plainly at variance with the purpose or policy of the legislation as a whole, this court has no authority to deviate from the language used by the Legislature.

The dissent erroneously cites *D'Amico v Christie* (71 NY2d 76) and *Gabrielle v Craft* (75 AD2d 939) as precedent for not interpreting "any person" to mean literally any person. In those cases, the courts, interpreting General Obligations Law

§ 11-101 (1), did not construe the words "any person" but instead construed the limiting words "unlawful[ly] selling" and, thus, they properly declined to extend liability to social hosts.

Finally, the dissent acknowledges that General Obligations Law § 11-100 "should be construed and interpreted, wherever possible, consistently with the construction and interpretation of General Obligations Law § 11-101 (see, Sheehy v Big Flats Community Day, 73 NY2d 629, 635; see also, Gabrielle v Craft, 75 AD2d 939)." It is inconceivable that, in enacting section 11-101, the Legislature intended to limit liability to sellers 21 years of age or older when persons under that age are permitted to sell and dispense intoxicating liquors (see, Alcoholic Beverage Control Law § 100 [2-a]).

## III

■ We agree with defendant Cycyk, however, that the trial court should have permitted his motion to amend his answer. At trial, defendant Cycyk wished to introduce proof that Dawn Schrader's actions the night of the accident precluded her from recovering against him (see, Mitchell v The Shoals, 19 NY2d 338; Powers v Niagara Mohawk Power Corp., 129 AD2d 37, 41). The court denied defendant's motion to amend his answer to plead as an affirmative defense that her actions precluded recovery under General Obligations Law § 11-100 because the amendment would cause extreme prejudice and surprise to plaintiffs, inasmuch as Dawn Schrader had no memory of the events that night.

Plaintiffs had sufficient notice that such proof might be offered in light of defendant's affirmative defense of culpable conduct and the allegation in defendant's bill of particulars that Dawn Schrader "failed to take prudent steps for her own safety". Plaintiffs' counsel was also aware of the fact that Dawn Schrader had contributed to the purchase of the alcohol, as evidenced by testimony from an examination before trial contained in the record. Finally, prejudice to the non-moving party is not established merely because an amended pleading will defeat his or her claim (see, Murray v City of New York, 43 NY2d 400, rearg dismissed 45 NY2d 966; Cameli v Pace Univ., 131 AD2d 419; 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3025.15).

■ We also agree with defendant Cycyk that his affirmative defense of comparative negligence (CPLR 1411) should not

have been dismissed. The trial court dismissed the affirmative defense because there was no evidence that Dawn Schrader had done anything to contribute to the accident. The evidence raised a question of fact, however, whether Dawn Schrader was negligent by entering into the vehicle with knowledge of the driver's impaired condition (see, Ciserano v Sforza, 130 AD2d 618, 620).

■ The trial court should have instructed the jury to apportion liability among the culpable parties. Whether or not defendant Cycyk can claim the benefit of CPLR 1601 and thus limit his liability to plaintiffs, he is entitled to collect from the codefendants found liable any amount he is required to pay plaintiffs in excess of his proportionate share of liability. Thus, on retrial, defendant Cycyk is entitled to a charge on apportionment of liability.

We find defendant Cycyk's remaining arguments to be without merit.

## IV

On his appeal, George Catalano contends only that plaintiffs' cause of action against him should not have been submitted to the jury.

Plaintiffs' cause of action against George Catalano was asserted pursuant to Vehicle and Traffic Law § 388 (1), which provides: "Every owner of a motor vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle * * * by any person using or operating the same with the permission, express or implied, of such owner". Under this statute, "proof of ownership of a motor vehicle creates a rebuttable presumption that the driver was using the vehicle with the owner's permission, express or implied * * * this presumption continues until there is substantial evidence to the contrary" (Leotta v Plessinger, 8 NY2d 449, 461; see, State Farm Mut. Auto. Ins. v White, 175 AD2d 122; Albouyeh v County of Suffolk, 96 AD2d 543, 544, affd 62 NY2d 681). When an owner offers proof tending to rebut the presumption of permission, "even where the owner may escape liability, it is unquestionable that, unless the evidence adduced has no merit whatsoever, the question of consent and authority is for the jury" (Leotta v Plessinger, supra, at 461; see, Walls v Zuvic, 113 AD2d 936, 937, lv denied 67 NY2d 602; see also, Reyes v Sternberg, 27 AD2d 828; but see, State Farm

*Mut. Auto. Ins. v White, supra; Guerra v Kings Plaza Leasing Corp.,* 172 AD2d 583; *Bruno v Privilegi,* 148 AD2d 652).

█ In this case, there is no issue of express permission; it is uncontroverted that George Catalano gave express permission only to his son, Jody. The issue then was implied consent, which George Catalano had the burden of overcoming. There was no relationship between Carney and George Catalano nor any prior history of use of the vehicle by Carney. There was testimony, however, that Jody may have given Carney permission to drive the vehicle. On these facts, George Catalano did not overcome the statutory presumption, as a matter of law *(see, Comstock v Beeman,* 24 AD2d 931, 932, *affd* 18 NY2d 772).* The issue was properly submitted to the jury, and its finding of permissive use was not unreasonable.

## V

Plaintiffs have appealed from the judgment to the extent that the gross verdict was reduced by 25% on the basis of the seat belt defense. They contend that the seat belt defense should not have been submitted to the jury because defendants failed to offer any proof that there was a causal connection between Dawn Schrader's injuries and the fact that she struck the dashboard and windshield of the automobile.

"[N]onuse of an available seat belt, and expert testimony in regard thereto, is a factor which the jury may consider, in light of all the other facts received in evidence, in arriving at its determination as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain * * * [T]he burden of pleading and proving that nonuse thereof by the plaintiff resulted in increasing the extent of his injuries and damages, rests upon the defendant. That is to say, the issue should not be submitted to the jury unless the defendant can demonstrate, by competent evidence, a causal connection between the plaintiff's nonuse of an available seat belt and the injuries and damages sustained." *(Spier v Barker,* 35 NY2d 444, 449-450.)

█ In this case, the defense offered expert testimony by an engineer that Dawn Schrader struck the dashboard and windshield of the automobile, but would not have struck them had she been wearing a seat belt. Had there been evidence that Dawn Schrader's injuries were caused by her contact with the dashboard and the windshield, the defense's expert testimony would have been enough to allow the seat belt defense to go to

the jury (see, Cappadona v State of New York, 154 AD2d 498, 500; Dowling v Dowling, 138 AD2d 345). Plaintiffs, however, successfully objected to defense counsel's attempt to elicit from the engineer whether Dawn Schrader's striking the windshield caused her injuries and defendants offered no other proof in that respect. The only proof at trial regarding the cause of injury was offered by Dr. Czyrny, who testified that the injury was caused, not by an impact, but rotational acceleration deceleration. He testified that Dawn Schrader's injury was caused by the continued movement of her brain within her skull after the automobile came to an abrupt stop. Czyrny analogized the brain to several layers of jello whirling around and described a shift between layers, causing a shearing injury that damaged nerves and blood vessels. He distinguished this from coup contrecoup injury, where the impact of a blow causes brain damage beneath the blow and on the opposite side of the head.

In short, there was no evidence tying Dawn Schrader's injury to the fact that her head may have hit the windshield because she had not been wearing a seat belt. Accordingly, the seat belt defense should not have been submitted to the jury, and the gross verdict should not have been reduced by 25%.

## VI

Accordingly, the judgment of Supreme Court should be modified by vacating that part of the judgment that reduced Dawn Schrader's recovery under the seat belt defense and a new trial should be granted on the issue of defendant Cycyk's liability, the apportionment of culpability among the defendants found liable, upon the affirmative defense asserted in defendant Cycyk's amended answer, and on the issue of Dawn Schrader's comparative negligence. The jury's finding concerning the total amount of damages suffered by plaintiffs should not be disturbed.

PINE, J. (dissenting in part). We respectfully dissent from that part of the majority's opinion that concludes that Matthew Cycyk may be held liable to plaintiff pursuant to General Obligations Law § 11-100. In our view, the majority's construction of that statute ignores settled construction of General Obligations Law § 11-101. Accordingly, we would reverse the judgment against Cycyk and dismiss the complaint against him.

General Obligations Law § 11-100, provides in pertinent

part: "1. Any person who shall be injured in person, property, means of support or otherwise, by reason of the intoxication or impairment of ability of any person under the age of twenty-one years, whether resulting in his death or not, shall have a right of action to recover actual damages against any person who knowingly causes such intoxication or impairment of ability by unlawfully furnishing to or unlawfully assisting in procuring alcoholic beverages for such person with knowledge or reasonable cause to believe that such person was under the age of twenty-one years."

The language of General Obligations Law § 11-100 plainly states that "any person" providing a minor with alcoholic beverages may be held liable. If the statute's meaning depended only upon the language enacted by the Legislature, the inquiry here would be easily resolved. However, "an apparent lack of ambiguity is rarely, if ever, conclusive *(New York State Bankers Assn. v Albright,* 38 NY2d 430, 436-437). Generally, inquiry must be made of the spirit and purpose of the legislation" *(Matter of Sutka v Conners,* 73 NY2d 395, 403; *see, Ferres v City of New Rochelle,* 68 NY2d 446, 451). An exploration of the legislative purpose behind General Obligations Law § 11-100 leads to the conclusion that "any person" does not mean literally any person.

The legislative history is clear that General Obligations Law § 11-100 "was enacted for the purpose of imposing liability in situations where alcohol is merely *furnished* to a person under age 21, thereby filling a gap created by the unlawful *sale* provisions of General Obligations Law § 11-101" *(McCauley v Carmel Lanes,* 178 AD2d 835, 836). In light of that purpose, and the Legislature's continued use of language that had been subject to interpretation for many years, General Obligations Law § 11-100 should be construed and interpreted, wherever possible, consistently with the construction and interpretation of General Obligations Law § 11-101 *(see, Sheehy v Big Flats Community Day,* 73 NY2d 629, 635; *see also, Gabrielle v Craft,* 75 AD2d 939).

Because the rule that liability attaches to a person who merely supplies a tort-feasor with alcohol is in derogation of the common law, General Obligations Law § 11-101 has been narrowly construed *(see, e.g., D'Amico v Christie,* 71 NY2d 76, 83). Likewise, General Obligations Law § 11-100 should be narrowly construed.

Although General Obligations Law § 11-101 (1) speaks

broadly of "any person who shall, by unlawful[ly] selling to or by unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication", that language has never been applied to mean literally any person who unlawfully assists, but has, instead, been limited to meaning commercial sellers *(see, D'Amico v Christie, supra; Gabrielle v Craft, supra)*. Indeed, it was this very limitation that led to the enactment of General Obligations Law § 11-100.

In addition to limiting the persons against whom General Obligations Law § 11-101 (1) may be used, the class of persons who could claim the benefit of the statute, stated as "any person", has also been limited. For example, a person who contributes to the intoxication of the tort-feasor is precluded from recovery *(see, Mitchell v The Shoals,* 19 NY2d 338; *Prunty v Keltie's Bum Steer,* 163 AD2d 595; *Powers v Niagara Mohawk Power Corp.,* 129 AD2d 37), even though no such bar to recovery is suggested by the language of the statute. Also, "any person" who could claim the benefit of the statute does not include the plaintiff whose injuries are the result of his/her own intoxication *(see, Van Neil v Hopper,* 167 AD2d 954, 955; *Marsico v Southland Corp.,* 148 AD2d 503). That latter limitation on "any person" had already been recognized in the context of General Obligations Law § 11-100 *(see, Stambach v Pierce,* 162 AD2d 1054, *appeal dismissed* 77 NY2d 821).

"Any person", therefore, does not mean literally any person for the purposes of General Obligations Law § 11-101, and it should not mean literally any person for the purposes of General Obligations Law § 11-100. The issue raised by this case is whether it would be consistent with the statutory scheme and the legislative history to include minors within the scope of "any person" under General Obligations Law § 11-100 (1). On this question, the case law construing General Obligations Law § 11-101 provides no direct assistance.

An examination of the legislative history behind General Obligations Law § 11-100, however, reveals that the Legislature intended to impose liability on adult persons who provide alcoholic beverages to, and cause the intoxication of, underage persons. The majority's reluctance to recognize that intent reflects an unwarranted and unnecessary adherence to form over substance.

In light of the legislative intent and the history surrounding General Obligations Law §§ 11-100 and 11-101, we conclude

that an underaged person does not fall within the class of persons who may be liable under General Obligations Law § 11-100.

BOEHM and DAVIS, JJ., concur with BOOMER, J. P.; PINE, J., dissents in part in a separate opinion in which LAWTON, J., concurs.

Judgment modified, on the law, and as modified, affirmed, without costs, and new trial granted in accordance with the opinion by BOOMER, J. P.