[—— NYS2d ——]

CANDICE G. ADAMY, Individually and as Administratrix of the Estate of JOSEPH P. ADAMY, Deceased, Respondent, v MARK T. ZIRIAKUS et al., Defendants, and T.G.I. FRIDAY'S, INC., Appellant. (Appeal No. 1.)

Fourth Department, May 30, 1997

82

APPEARANCES OF COUNSEL

*Edward C. Cosgrove,* Buffalo, for appellant.
*Eugene C. Tenney,* Buffalo, for respondent.

## OPINION OF THE COURT

DENMAN, P. J.

Plaintiff's decedent, a Town of Amherst police officer, died as a result of injuries sustained in an accident in which decedent's vehicle struck a vehicle driven by defendant Mark T. Ziriakus.

Plaintiff commenced this action individually and as administratrix of the estate of decedent against, *inter alia*, Ziriakus and T.G.I. Friday's, Inc. (Friday's). Plaintiff alleges against Friday's that Friday's served Ziriakus alcoholic beverages prior to the accident, that Ziriakus became intoxicated while a patron of Friday's, and that Friday's is liable pursuant to General Obligations Law § 11-101 and Alcoholic Beverage Control Law § 65. Plaintiff established at trial that Ziriakus went to Friday's around 10:30 P.M. on the night of the accident and had not had any alcoholic beverages before he got there. A person who was with Ziriakus that night testified that Ziriakus had two or three beers, but admitted that he had given an earlier statement that Ziriakus might have had four beers in the hour that the two spent together. The only other witnesses who observed Ziriakus at Friday's were various employees. They testified that they sold Ziriakus several drinks, but that he was not visibly intoxicated at any time while he was at Friday's. Ziriakus admitted that he had beer and liquor at Friday's and that he stayed there for about $2^1/_2$ hours, then left to go to a night club several blocks away. The accident occurred at approximately 1:30 A.M., minutes after he left Friday's.

Several police officers who responded to the accident testified that Ziriakus was intoxicated. One officer observed that Ziriakus had a strong odor of alcohol on his breath and that his eyes were bloodshot and glassy. The officer believed that Ziriakus was intoxicated. Another officer observed that Ziriakus had bloodshot and glassy eyes, that his speech was slurred, and that he had a "distinct odor of alcoholic beverage emanating from his breath". That officer performed field sobriety tests, which Ziriakus failed; the officer immediately arrested Ziriakus for driving while intoxicated. Furthermore, the officer observed Ziriakus staggering when he was taken to the station house. A third officer observed Ziriakus immediately after the accident and testified that Ziriakus "stared straight ahead" and would not respond to the officer's questions. The officer also observed signs of intoxication: a strong odor of alcohol on the breath and bloodshot and watery eyes.

Ziriakus did not cooperate with the police in taking a roadside Alco-Sensor test immediately after the accident, but agreed to submit to a blood test, which was administered at about 3:00 A.M. The blood sample revealed a blood alcohol content (BAC) of .17%. Plaintiff introduced certificates of conviction establishing that Ziriakus had been convicted of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]) and failure to yield (Vehicle and Traffic Law § 1141).

Plaintiff presented testimony from a forensic pathologist, who opined that, based upon Ziriakus' BAC of .17% at 3:00 A.M., Ziriakus would had to have had at least 12 drinks. He further concluded that Ziriakus' BAC when Ziriakus left Friday's would have been .2% and that, based on that conclusion, Ziriakus would have been visibly intoxicated when last served at Friday's.

Friday's presented an expert in the field of pharmacokinetics, who disagreed with plaintiff's expert, and opined that, if Ziriakus had consumed 12 drinks between 10:30 P.M. and 1:00 A.M., his BAC would have been .28% to .34% when he was at Friday's and Ziriakus would not have been able to walk out the door. In the opinion of Friday's expert, Ziriakus' BAC when Ziriakus left Friday's was between .08% and .12%. Friday's also presented testimony from an accident reconstruction expert, who testified that decedent was traveling between 67 and 73 miles per hour at the time of the accident, well in excess of the speed limit.

The jury found Ziriakus 40% liable, Friday's 30% liable, and decedent 30% liable, and awarded damages of $5,505,474.96 for past and future economic loss and funeral expenses. Friday's moved pursuant to CPLR 4404 (a) for judgment notwithstanding the verdict or, in the alternative, for a new trial; Friday's also moved to reduce the jury verdict to reflect payments received by plaintiff from collateral sources (see, CPLR 4545 [c]) and to limit the judgment entered against it for future damages to one lump sum of $250,000 in favor of plaintiff (see, CPLR 5041 [b]). Supreme Court denied the motion to set aside the verdict and determined various damages issues. On appeal, Friday's contends that the verdict is against the weight of the evidence and that the court erred in determining the damages issues.

# I

Friday's contends that the verdict is against the weight of the evidence because there is no direct proof that Ziriakus was served alcoholic beverages while he was visibly intoxicated. Friday's relies on the testimony of several bartenders and one patron, all of whom testified that Ziriakus was not visibly intoxicated. Plaintiff responds that visible intoxication was proved by circumstantial evidence, namely, the testimony of the police officers who observed Ziriakus in an intoxicated condition about 45 minutes after he left Friday's, by the amount of alcohol in Ziriakus' blood approximately 90 minutes

after the accident, and by the opinion of the expert who testified that the BAC of Ziriakus while he was at Friday's would have been at least .2% and thus he would have been visibly intoxicated.

General Obligations Law § 11-101, commonly known as the Dram Shop Act, provides that a person who is injured by an intoxicated person has a cause of action against "any person who shall, by unlawfully selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication" (General Obligations Law § 11-101 [1]). Alcoholic Beverage Control Law § 65 (2) prohibits the sale of alcoholic beverages to "[a]ny visibly intoxicated person". The statute was amended in 1986 to replace a more relaxed standard that imposed liability on any person who sold alcohol to a person "actually or apparently, under the influence of liquor" (L 1986, ch 750, § 1).

We reject the contention of Friday's that plaintiff is required to establish her Dram Shop cause of action by direct evidence. In *Nesbitt v Jackson* (178 AD2d 931), we reinstated a Dram Shop cause of action where the plaintiffs "adduced competent eyewitness and expert opinion testimony tending to establish, *circumstantially*, that decedent was intoxicated at the time he was sold alcoholic beverages" (*Nesbitt v Jackson, supra*, at 932 [emphasis supplied]). Similarly, in *Blazynski v Gallagher* (187 AD2d 1018), we held that defendant The Trolley Stop was not entitled to summary judgment on the Dram Shop cause of action "because plaintiff raised a triable issue of fact whether the driver who injured plaintiff was visibly intoxicated when she was sold alcoholic beverages at The Trolley Stop" (*Blazynski v Gallagher, supra*). The records in those cases reveal that, as here, the moving defendants submitted competent proof from bartenders and patrons that the intoxicated person did not appear to be intoxicated while at the establishments of the moving defendants. In both cases, the plaintiffs submitted proof of the intoxicated person's BAC and presented expert testimony regarding the effects of alcohol; in *Blazynski*, there was additional testimony regarding the intoxicated person's behavior at The Trolley Stop and after the accident. Thus, in both cases, we relied on circumstantial evidence to deny the motions for summary judgment on the Dram Shop causes of action. It is not significant that *Nesbitt* and *Blazynski* are summary judgment cases; if evidence adduced by the plaintiffs in opposition to the summary judgment motions is sufficient to raise a question of fact for the jury, the jury's verdict following introduc-

tion of the same or similar evidence must be accepted unless it could not have been reached on any fair interpretation of the evidence (*see, Grassi v Ulrich*, 87 NY2d 954, 956; *Lolik v Big V Supermarkets*, 86 NY2d 744, 746).

We agree with the Third Department that proof of intoxication, established by one's BAC or by the fact that one has consumed a certain amount of alcohol, is not enough, without more, to sustain a Dram Shop cause of action (*see, Romano v Stanley*, 220 AD2d 5, 7-8, *revd on other grounds* 90 NY2d 444). Here, however, there was additional proof of Ziriakus' behavior following the accident that supported an inference by the jury that Ziriakus was visibly intoxicated when he left Friday's. We reject the contention of Friday's that the court erred in refusing to allow Friday's to submit evidence regarding the alcohol awareness and training provided to its employees. Finally, the dispute between the experts about how many drinks Ziriakus must have consumed to reach a BAC of .17% at 3:00 A.M. is a credibility question that was resolved by the jury.

## II

■ Friday's contends that the court erred in refusing to reduce the verdict against it by the percentage of decedent's liability. The jury found decedent 30% liable for the accident, but the court entered a judgment against Friday's for 100% of the verdict. That was error.

One of the salutary purposes of the Dram Shop Act is "to protect the [spouse] and children of an intoxicated person when they were deprived of their means of support as a result of [the] intoxication" (*Matalavage v Sadler*, 77 AD2d 39, 43 [emphasis deleted]; *see, Coughlin v Barker Ave. Assocs.*, 202 AD2d 622, 623). Thus, in *Bartlett v Grande* (103 AD2d 671), we held that a defendant vendor in a Dram Shop cause of action was barred by public policy from seeking contribution from the estate of the vendee "when it is the vendee's dependents who are seeking recovery" (*Bartlett v Grande, supra*, at 672). Here, unlike the situation in *Bartlett*, the issue is whether recovery by a third person, not a spouse or dependent of the intoxicated person, should be diminished by the third person's liability. There is no reason not to reduce the verdict against Friday's by the amount of decedent's liability where decedent is not the vendee (*cf., Schrader v Carney*, 180 AD2d 200).

## III

■ Friday's contends that CPLR 4545 (c) requires reduction of the verdict by three collateral sources, namely, death

benefits paid pursuant to 42 USC § 3796, death benefits paid pursuant to a collective bargaining agreement between the Town of Amherst and Amherst Police Club, and retirement benefits paid pursuant to Retirement and Social Security Law §§ 361 and 361-a. The court determined that the first two benefits are in the nature of life insurance and that the third is explicitly excluded as a collateral source by statute (see, CPLR 4545 [c]). We agree with that determination.

Moreover, the burden of proof with regard to evidence of collateral source payments rests on defendant (see, Caruso v LeFrois Bldrs., 217 AD2d 256, 258-259). Friday's failed to match the collateral sources to items of loss in the verdict and thus failed to sustain its burden (see, Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81).

## IV

■ The court awarded lump-sum payments of $250,000 to plaintiff and to each of decedent's five minor children on the award for future lost wages. Friday's contends that the court erred in making that award and should have awarded only a single lump-sum payment of $250,000 because the jury returned a single verdict for a single cause of action for wrongful death. We agree with that contention.

CPLR 5041 provides in pertinent part:

"In order to determine what judgment is to be entered on a verdict in an action to recover damages for personal injury, injury to property or wrongful death under this article * * * the court shall proceed as follows * * *

"(b) The court shall enter judgment in lump sum * * * for future damages not in excess of [$250,000] * * * For the purposes of this section, any lump sum payment of a portion of future damages shall be deemed to include the elements of future damages in the same proportion as such elements comprise of the total award for future damages as determined by the trier of fact."

The issue is whether in a wrongful death action with multiple beneficiaries, each beneficiary is entitled to receive a lump-sum payment of $250,000 from the future damages portion of the verdict. The statute itself does not provide guidance and we have found no case on point. The Estates, Powers and Trusts Law (EPTL), however, provides some guidance. EPTL 5-4.1 (1) permits the personal representative of a decedent "who is survived by distributees" to "maintain an action to re-

cover damages for a wrongful act * * * which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." EPTL 5-4.4 (a) provides that damages recovered in a wrongful death action "are exclusively for the benefit of the decedent's distributees and, when collected, shall be distributed to the persons entitled thereto under [EPTL] 4-1.1 and 5-4.5". Here, the verdict sheet asked the jury to state the total amount of damages sustained by plaintiff "and the other distributees of the estate of [decedent]". The jury awarded future damages of $5,000,000, with $2,000,000 for plaintiff and $600,000 for each of the five children. Thus, the verdict sheet listed the distributees for the purpose of complying with EPTL 5-4.4, but in keeping with the purpose of CPLR 5041, the court should not have awarded a lump sum for future damages for each of the distributees. Plaintiff commenced this action individually and as administratrix of the estate, and thus the children recover as distributees. Plaintiff's construction of the statute improperly increases the underlying liability of Friday's (see, *Rohring v City of Niagara Falls*, 84 NY2d 60, 67). Thus, the judgment should be modified to reflect one initial lump-sum payment for future damages of $250,000 to plaintiff.

## V

■ Friday's contends that the court abused its discretion in permitting plaintiff to establish proximate cause through the rebuttal testimony of an accident reconstruction expert. We reject that contention. "Under the Dram Shop Act, '[i]t is sufficient * * * if some reasonable or practical connection between the unlawful sale and the wrongful death is established' (*Bartkowiak v St. Adalbert's R. C. Church Socy.*, 40 AD2d 306, 310; see, *Johnson v Plotkin*, 172 AD2d 88, 92, *lv dismissed* 79 NY2d 977). Proximate cause, as must be established within the context of a conventional common-law negligence action, is not required" (*Church v Burdick*, 227 AD2d 817, 818). In any event, plaintiff established in her direct case that Ziriakus was negligent as a matter of law because of his intoxication and his failure to yield the right-of-way. Friday's attempted to show that the accident was caused by the excessive speed of decedent's vehicle. In rebuttal, plaintiff presented an expert who testified that decedent was traveling at a significantly slower rate of speed than testified to by the expert for Friday's. Thus, plaintiff in rebuttal simply responded to the attempt by Friday's to show that decedent was 100% responsible for the

accident because of his excessive speed and it was not improper for the court to admit that testimony.

## VI

Accordingly, the judgment should be modified by deleting that part of the fifth decretal paragraph that provides for lump-sum payment of future damages to the distributees, and the matter should be remitted to Supreme Court to grant judgment against Friday's to reflect that the verdict against it should be reduced by the amount of liability of plaintiff's decedent, and otherwise the judgment should be affirmed.

PINE, CALLAHAN, BALIO and FALLON, JJ., concur.

Judgment unanimously modified, on the law, and as modified, affirmed, without costs, and matter remitted to Supreme Court for further proceedings in accordance with the opinion by DENMAN, P. J.

CANDICE G. ADAMY, Individually and as Administratrix of the Estate of JOSEPH P. ADAMY, Deceased, Respondent, v MARK T. ZIRIAKUS et al., Defendants, and T.G.I. FRIDAY'S, INC., Appellant. (Appeal No. 2.) [661 NYS2d 577] —Appeal unanimously dismissed, without costs (see, CPLR 5501 [a] [1], [2]). (Appeal from Order and Judgment of Supreme Court, Erie County, O'Donnell, J.—Set Aside Verdict.) Present—DENMAN, P. J., PINE, CALLAHAN, BALIO and FALLON, JJ.