[884 NYS2d 534]

CHRISTOPHER OURSLER, Individually and as Administrator of the Estate of JULIE OURSLER, Deceased, Appellant, v ROBERT E. BRENNAN, Appellant, and MALBEAT, INC., Doing Business as MALLWITZ'S ISLAND LANES, Respondent.

Fourth Department, August 28, 2009

## APPEARANCES OF COUNSEL

*Paul William Beltz, P.C.*, Buffalo (*Debra A. Norton* of counsel), for Christopher Oursler, appellant.

*Damon & Morey LLP*, Buffalo (*Joseph W. Dunbar* of counsel), for Robert E. Brennan, appellant.

*Law Offices of Douglas Coppola*, Buffalo (*Patricia Stroman Walker* of counsel), for respondent.

## OPINION OF THE COURT

PERADOTTO, J.

The primary issue to be determined on this appeal is what actions constitute "guilty participation" on the part of a plaintiff so as to preclude recovery under General Obligations Law § 11-101 (Dram Shop Act). More specifically, we must determine whether plaintiff is unable to state a cause of action under that statute as a matter of law because he purchased two alcoholic beverages for his wife (decedent). We conclude that defendant Malbeat, Inc., doing business as Mallwitz's Island Lanes (Malbeat), did not meet its burden of establishing, as a matter of law, that plaintiff is precluded from recovering under the Dram Shop Act based on the fact that he bought decedent two drinks on the night that she was killed.

### Factual Background

On October 26, 2002, plaintiff and decedent attended a Halloween costume party at Mallwitz's Island Lanes in Grand Island (Island Lanes), an establishment owned by Malbeat. Decedent was dressed as a witch and was clad entirely in black. The couple arrived at the party at approximately 10:30 P.M. Plaintiff purchased decedent's first drink of the night, a beer, shortly after the couple's arrival. For much of the party, decedent sang Karaoke in the bar area of the bowling alley while plaintiff played pool and shuffleboard in the back room. Plaintiff testified at his deposition that he purchased a second beer for decedent sometime prior to the costume contest, which occurred at approximately 12:30 A.M. Island Lanes also offered its patrons free "Jell-O shots" containing alcohol, and plaintiff testified that decedent consumed at least two of those shots. Throughout the evening, decedent purchased additional drinks for herself, and the couple's friends also took turns purchasing drinks for decedent. Plaintiff estimated that decedent consumed approximately six beers at the party.

After the winner of the costume contest was announced, decedent began to argue with another contestant. Plaintiff and

decedent left Island Lanes, but the altercation continued in the parking lot and plaintiff was injured. The police arrived on the scene at approximately 1:45 A.M. and concluded that decedent was intoxicated. Plaintiff was taken to the hospital in an ambulance and an officer drove decedent to her mother's house.

Approximately an hour after the police left decedent with her mother, decedent departed on foot in search of her husband, whom she erroneously believed had been taken to the police station. As decedent was walking along the unlit shoulder of Whitehaven Road, still dressed entirely in black, defendant Robert E. Brennan struck decedent with the driver's side mirror of his vehicle as he was entering his driveway. Brennan continued into his driveway and called 911 from his home. Minutes later, an officer responding to calls concerning a suspicious person walking down Whitehaven Road ran over decedent in his patrol vehicle as she lay on the side of the road. Decedent's injuries were fatal.

## Procedural History

Plaintiff commenced this action, individually and as the administrator of decedent's estate, seeking damages resulting from decedent's death. As administrator of decedent's estate, plaintiff asserted causes of action for negligence against Brennan and Malbeat. Both in his individual capacity and as administrator of decedent's estate, plaintiff asserted causes of action for violations of the Dram Shop Act against Malbeat. In his answer, Brennan interposed a cross claim for contribution.

Malbeat moved for summary judgment dismissing the complaint and all cross claims against it, and Supreme Court granted the motion. Although the court concluded that a jury could find that Malbeat violated the Dram Shop Act, it further concluded that an intoxicated person does not have a cause of action under the statute. With respect to Brennan's cross claim, the court concluded that, because "there cannot be a finding against Malbeat, there can be no right to contribution."

Plaintiff contends on appeal only that the court erred in dismissing his fourth cause of action, asserted in his individual capacity, for loss of support pursuant to the Dram Shop Act. Brennan contends that the court erred in dismissing his cross claim for contribution against Malbeat. We agree.

## "Guilty Participation" Under the Dram Shop Act

Under the Alcoholic Beverage Control Law, it is unlawful to sell, deliver or give away alcoholic beverages to "[a]ny visibly

intoxicated person" (§ 65 [2]). New York's Dram Shop Act affords a person injured "by reason of the intoxication" of another person a right of action against the party that unlawfully purveyed the alcohol (General Obligations Law § 11-101 [1]; *see Mitchell v The Shoals, Inc.*, 19 NY2d 338, 340-341 [1967]). The Dram Shop Act is remedial in nature and serves the dual purposes of deterring bar owners and their employees from selling alcoholic beverages to intoxicated persons and of compensating individuals injured as a result of the unlawful sale of alcohol (*see Bartlett v Grande*, 103 AD2d 671, 672 [1984]).

It is well settled that an intoxicated person or his or her estate cannot maintain a cause of action under the Dram Shop Act for injuries sustained as a result of that person's own intoxication (*see Mitchell*, 19 NY2d at 340-341; *Armstrong v Petsche*, 172 AD2d 1079 [1991]; *Powers v Niagara Mohawk Power Corp.*, 129 AD2d 37, 41 [1987]). Thus, as plaintiff correctly concedes on appeal, the court properly dismissed the Dram Shop Act cause of action against Malbeat on behalf of decedent's estate. Plaintiff, however, may maintain a cause of action in his individual capacity for loss of support as decedent's surviving spouse (*see Coughlin v Barker Ave. Assoc.*, 202 AD2d 622, 623 [1994]). Indeed, "[o]ne of the salutary purposes of the Dram Shop Act is 'to protect the [spouse] . . . of an intoxicated person when [he or she was] deprived of [his or her] means of support as a result of [the] intoxication' " (*Adamy v Ziriakus* [appeal No. 1], 231 AD2d 80, 86 [1997], *affd* 92 NY2d 396 [1998]).

Malbeat contends that plaintiff does not have a valid cause of action under the Dram Shop Act as a matter of law because he procured alcohol for decedent. We reject that contention. Pursuant to the decision of the Court of Appeals in *Mitchell* (19 NY2d at 341), the relevant inquiry is not whether plaintiff procured one or more drinks for decedent during the course of the evening but, rather, whether plaintiff caused or procured decedent's *intoxication*. In our view, Malbeat's contention that the purchase of even a single drink for decedent forecloses plaintiff's recovery under the Dram Shop Act strays from the principles articulated by the Court in *Mitchell* and improperly restricts the remedial aims of the statute.

In *Mitchell*, the Court of Appeals concluded that, as long as the injured third party "does not himself [or herself] *cause or procure the intoxication* of the other, there is no basis, under the statute, for denying him [or her] a recovery from the party unlawfully purveying the liquor" (19 NY2d at 341 [emphasis

added]). Thus, in determining whether a plaintiff may recover under the statute, the ultimate issue is whether his or her conduct constitutes "guilty participation in [the] intoxication" (*id.*). According to the Court of Appeals, a plaintiff "must play a much more affirmative role than that of drinking companion to the [intoxicated person] before [the plaintiff] may be denied recovery against the [establishment that] served" the intoxicated person (*id.*).

Malbeat cites several cases to support its contention that the purchase of even a single drink for the intoxicated person in question precludes a plaintiff's recovery under the Dram Shop Act as a matter of law (*see e.g. Bregartner v Southland Corp.*, 257 AD2d 554, 555-556 [1999]; *Dodge v Victory Mkts.*, 199 AD2d 917, 920 [1993]). Those cases, however, involve the provision of alcohol to minors or rely on precedent established in that context. In fact, many of those cases cite *Vandenburg v Brosnan* (129 AD2d 793 [1987], *affd* 70 NY2d 940 [1988]). In *Vandenburg*, the Second Department held that the plaintiff, who purchased the beer consumed by the minor driver of the vehicle in which he was a passenger at the time of the accident, had no cognizable cause of action under the Dram Shop Act because he "procured the alcoholic beverage for the person whose intoxication allegedly caused the accident" (*id.* at 794). In our view, the rule set forth in *Vandenburg* is appropriate in cases involving minors, for whom the purchase of even a single alcoholic beverage is unlawful (*see* Alcoholic Beverage Control Law § 65 [1]). Thus, purchasing a drink for a minor or contributing money toward the purchase of alcohol for a minor alone constitutes "guilty participation" in the minor's intoxication (*see Schrader v Carney*, 198 AD2d 779, 780 [1993], *lv dismissed* 83 NY2d 801 [1994]). The purchase of alcohol for minors, however, is wholly distinguishable from the facts of this case as well as the facts before the Court of Appeals in *Mitchell* inasmuch as the purchase of an alcoholic beverage for an adult is not, in and of itself, an illegal act.

In our view, the appropriate rule in cases that do not involve minors is one that balances the dual purposes of the Legislature in enacting the Dram Shop Act, i.e., to deter the sale of alcoholic beverages to visibly intoxicated persons and to compensate those injured as a result of the unlawful sale of alcohol, with the fundamental common-law principle that a person may not profit from his or her own wrongdoing (*see generally Barker v Kallash*, 63 NY2d 19, 24-25 [1984]). It is in accordance with the lat-

ter principle that an intoxicated person is precluded from recovery under the Dram Shop Act for injuries occasioned by his or her own intoxication (*see generally Mitchell*, 19 NY2d at 340-341). We thus conclude by the same reasoning that a person who affirmatively causes or encourages the intoxication of another person should not be permitted to assert a cause of action under the Dram Shop Act for injuries sustained as a result of that person's intoxication, because his or her conduct constitutes "guilty participation" under *Mitchell* (19 NY2d at 341; *see also Conrad v Beck-Turek, Ltd., Inc.*, 891 F Supp 962, 970 [1995]).

While the act of purchasing drinks for the intoxicated person may be sufficient to preclude recovery under the Dram Shop Act, we conclude that the mere act of purchasing drinks for a companion prior to his or her visible intoxication, without more, is insufficient to constitute "guilty participation" as a matter of law. As the Michigan Court of Appeals reasoned in *Arciero v Wicks* (150 Mich App 522, 529, 389 NW2d 116, 120 [1986]):

> "Were we to hold that the mere act of buying drinks for a person prior to visible intoxication of that person is sufficient to render the drink-buyer, as a matter of law, an active participant and a noninnocent party, anyone who bought a drink for another would automatically be precluded from recovery under the [Michigan] dramshop act for injuries caused by the recipient of the drink. For example, a party who bought drinks for a sober or apparently sober person early in the evening, parted ways with that person, and later that evening was somehow injured by that person (who had independently become very drunk) would be precluded from recovery. We cannot agree with this result."

Here, although plaintiff admits that he purchased two drinks for decedent during the course of the evening, there is also evidence that decedent obtained her own drinks, that the couple's friends purchased alcohol for decedent, that the bar provided Jell-O shots directly to decedent, and that plaintiff and decedent were apart for much of the party. It is undisputed that plaintiff purchased decedent her first drink of the night. It is not clear, however, at what point plaintiff purchased the second drink, nor does the record establish decedent's state of intoxication or sobriety at the time of that purchase. We thus conclude that there is a triable issue of fact whether plaintiff caused or

procured decedent's intoxication (*see Baker v John Harvards Brew House, LLC*, 43 AD3d 840 [2007]), and that the court therefore erred in dismissing the Dram Shop Act cause of action asserted by plaintiff in his individual capacity against Malbeat.

### Causation

■ Malbeat further contends that, in any event, dismissal of the complaint was warranted because there is no causal connection between Malbeat's alleged violation of the Dram Shop Act and decedent's death. Specifically, Malbeat contends that several intervening events broke the chain of causation between the alleged unlawful sale of alcohol and decedent's death several hours later. We reject that contention. At the outset, we note that, in an action to recover under the Dram Shop Act, "there must be 'some reasonable or practical connection' between the sale of alcohol and the resulting injuries; proximate cause, as must be established in a conventional negligence case, is not required" (*McNeill v Rugby Joe's*, 298 AD2d 369, 370 [2002]; *see Adamy*, 231 AD2d at 88; *Bartkowiak v St. Adalbert's R. C. Church Socy.*, 40 AD2d 306, 310 [1973]).

Thus, provided that there is a reasonable or practical connection between the unlawful sale and the resulting injuries, the presence of intervening acts or independent wrongdoing does not eliminate liability under the Dram Shop Act (*see generally Bertholf v O'Reilly*, 74 NY 509, 524 [1878]; *Daggett v Keshner*, 284 App Div 733, 737-738 [1954]). In *Bartkowiak*, for example, this Court concluded that there was sufficient evidence of a violation of the Dram Shop Act to create an issue of fact for the jury where the intoxicated person consumed beer at a party, went home, obtained a kitchen knife, concealed the knife in his pants, returned to the party, purchased additional beer, and stabbed the plaintiff's decedent (*see* 40 AD2d at 308-310). Also, in *Church v Burdick* (227 AD2d 817 [1996]), the intoxicated defendant returned to his home after an afternoon of drinking and fell asleep. He had been sleeping for 10 to 15 minutes when the plaintiff's decedent arrived and the two became involved in an argument, whereupon the intoxicated defendant pointed a firearm at the decedent, the weapon discharged, and the decedent was killed. Despite the intervening events between the unlawful sale of alcohol and the decedent's death, the Third Department concluded that there was a triable issue of fact with respect to causation (*id.* at 818; *see Etu v Cumberland Farms*, 148 AD2d 821, 822-823 [1989] [the decedent's parents

had a cause of action under the Dram Shop Act where the underage decedent purchased beer from the defendant, consumed it with his friends, returned home, obtained his mother's car keys from her purse, took the car without permission, and was then involved in a fatal car accident]).

Here, it cannot be said as a matter of law that there was no reasonable or practical connection between Malbeat's alleged unlawful sale of alcohol to decedent and her subsequent death. Decedent's mother and police witnesses testified at their respective depositions that decedent was intoxicated when she arrived at her mother's house. There is nothing in the record to suggest, let alone establish, that decedent was no longer intoxicated when she set off on foot 45 to 60 minutes later in a fatal quest to find her husband. To the contrary, the unreasonableness of decedent's insistence on walking to the police station to find her husband, despite having watched him being taken away in an ambulance earlier in the evening and having been informed by the police that he was being transported to the hospital, suggests that the conduct of decedent was the result of her continued intoxication. Thus, Malbeat failed to meet its burden of establishing its entitlement to judgment as a matter of law, and the issue of causation should be resolved by the jury (*see Bartkowiak*, 40 AD2d at 310).

### Brennan's Cross Claim for Contribution

■ We further conclude that the court erred in dismissing Brennan's cross claim for contribution against Malbeat. CPLR 1401 provides that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." The right to contribution "applies regardless of the theory or consistency of theory upon which liability may be imposed either as to the claims between them or the main claim" (*Smith v Guli*, 106 AD2d 120, 123 [1985]).

Brennan and Malbeat are both subject to liability for the same injury, i.e., the death of plaintiff's decedent. The fact that Brennan is subject to liability for damages under New York's wrongful death statute, while Malbeat is subject to liability for plaintiff's loss of support pursuant to the Dram Shop Act, does not render the cross claim for contribution invalid. As we recognized in *Fox v Mercer* (109 AD2d 59 [1985]),

"[D]ram [S]hop defendants and other alleged tort-feasors responsible for the same personal injury or wrongful death may claim contribution among themselves as to compensatory damages awarded to the injured party . . .

"This right of contribution reflects a consensus that in a [D]ram [S]hop action, the vendor of alcohol and other alleged tort-feasors are 'subject to liability for damages for the same personal injury, injury to property or wrongful death' " (109 AD2d at 64-65, quoting CPLR 1401).

It is well settled that the vendor of alcohol and an intoxicated tortfeasor may seek contribution from each other (*see e.g. Cresswell v Warden*, 164 AD2d 855, 856-857 [1990]; *Herrick v Second Cuthouse*, 100 AD2d 952 [1984], *affd* 64 NY2d 692 [1984]), and that co-vendors may also seek contribution from each other (*see Smith*, 106 AD2d at 123). We see no reason to distinguish cases where, as here, a tortfeasor seeks contribution for injuries he or she caused to an intoxicated pedestrian from the establishment that unlawfully served alcohol to the pedestrian. The right of contribution "requir[es] only that the party seeking contribution and the party from whom contribution is sought be liable, in whole or in part, for the same injury" (*Anderson v Comardo*, 107 Misc 2d 821, 823 [1981]). In this case, there is an issue of fact whether Brennan and Malbeat "jointly caused plaintiff's injuries, thereby requiring an apportionment of their respective fault" (*Strassner v Saleem*, 156 Misc 2d 768, 771 [1993]). "The critical requirement for apportionment under . . . CPLR article 14 is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought" (*Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 71 NY2d 599, 603 [1988]). Here, there is an issue of fact whether the alleged breach by Malbeat of its statutory duty not to provide alcohol to a visibly intoxicated person contributed to the presence of decedent on the roadway when she was struck by Brennan's vehicle, thereby contributing to the chain of events that resulted in her death.

## Conclusion

Accordingly, we conclude that the order insofar as appealed from should be reversed, Malbeat's motion for summary judgment denied in part and the fourth cause of action, asserted in plaintiff's individual capacity pursuant to the Dram Shop Act,

and Brennan's cross claim for contribution against Malbeat reinstated.

CARNI, J. (dissenting). I respectfully dissent. I agree with the majority that there is a triable issue of fact whether plaintiff caused or procured the intoxication of his wife (decedent) (*see Baker v John Harvards Brew House, LLC*, 43 AD3d 840 [2007]). I nevertheless conclude, however, that Supreme Court properly granted those parts of the motion of defendant Malbeat, Inc., doing business as Mallwitz's Island Lanes (Malbeat), for summary judgment dismissing the fourth cause of action, asserted in plaintiff's individual capacity, for a violation of the Dram Shop Act (General Obligations Law § 11-101), as well as the cross claim of defendant Robert E. Brennan against Malbeat. In my view, based on the undisputed facts as set forth herein, the majority is incorrect in concluding that it cannot be said as a matter of law that there was no "reasonable or practical connection" between the alleged unlawful sale of alcohol by Malbeat to decedent and the inconceivable and unimaginable confluence of circumstances and intervening actions giving rise to decedent's tragic death (*see Barry v Gorecki*, 38 AD3d 1213, 1215-1216 [2007]; *see generally Bartkowiak v St. Adalbert's R. C. Church Socy.*, 40 AD2d 306, 310 [1973]).

On the evening in question, plaintiff and decedent were attending a Halloween party at Mallwitz's Island Lanes (Island Lanes). Decedent was dressed entirely in black, as a witch. Following the altercation in the parking lot described by the majority, decedent was safely transported from Island Lanes to her mother's home by a Sheriff's Deputy at approximately 1:30 A.M.* Decedent's mother was awakened upon decedent's arrival. Approximately one hour later decedent's mother went to use the bathroom and decedent, still dressed in her black witch costume, left the home on that moonless October night and began to walk on an unlit road to the police station in an effort to find plaintiff.

Decedent's mother realized that decedent had left the home and drove along Whitehaven Road, where she found her daughter walking on the shoulder of the road in the direction of the

---

* On the night in question, the change from Daylight Savings Time (DST) to Eastern Standard Time (EST) was effectuated within the Sheriff's Department as of 2:00 A.M. DST. Thus, the Sheriff's Department dispatch records reflect that the call related to the altercation at Island Lanes came in at "1:41:28 DST" and decedent was transported to her mother's home at "1:33:57 EST." This of course would have been recorded as "2:33:57 DST" had DST remained in effect.

police station. Decedent's mother attempted to pull decedent into the vehicle but was unable to do so. Decedent's mother then returned home in her vehicle, called 911 and waited for the police to bring decedent home. The 911 call log indicates that the call from decedent's mother was received at 3:18 A.M. Decedent's mother did not drive alongside decedent with her lights flashing, nor did she attempt to provide any other protective measures as decedent walked along the dark road in her black witch costume.

Coincidentally, Brennan, an early riser, was simultaneously returning to his home on Whitehaven Road after having driven to the store to buy a newspaper. At approximately 3:25 A.M., Brennan approached his home on Whitehaven Road and attempted to back into his driveway. During that maneuver, Brennan's left side mirror hit decedent and knocked her down. Brennan got out of his vehicle and observed decedent on the ground at the "fog line" on the eastbound lane of the road. According to Brennan, decedent was moving and moaning. Without moving decedent to a place of safety or otherwise providing her with any assistance, Brennan reentered his vehicle and decided to drive rather than walk the remaining 100 yards to his house, whereupon he called 911. Brennan did not leave his vehicle at the scene with its lights flashing, nor did he take any measures to protect decedent from further injury when he left the scene to call 911. The 911 call log indicates that Brennan's call was received at 3:28 A.M.

At 3:29 A.M., the same Sheriff's Deputy who had delivered decedent to the safety of her mother's home earlier that morning responded to a 911 call reporting that a woman was walking in the center of Whitehaven Road. While en route to Whitehaven Road, that Sheriff's Deputy, followed by another Sheriff's Deputy, received another dispatch to respond to a 911 call reporting that a pedestrian had been struck by a vehicle on Whitehaven Road.

While driving along Whitehaven Road at approximately 3:30 A.M., the Sheriff's Deputy who had driven decedent to her mother's home drove his patrol vehicle over decedent as she lay in the eastbound lane. Decedent died as a result of the injuries she sustained when she was run over by the patrol vehicle.

In my view, the majority's conclusion that these undisputed facts do not establish as a matter of law that there was no "reasonable or practical connection" between Malbeat's alleged unlawful sale of alcohol to decedent and her death has effectively

stripped the limiting phrase "reasonable or practical connection" of any meaning or boundary.

Although it is well settled that, with respect to a cause of action pursuant to the Dram Shop Act, "[p]roximate cause, as must be established within the context of a conventional common-law negligence action, is not required" (*Church v Burdick*, 227 AD2d 817, 818 [1996]), there must still be "some reasonable or practical connection between the unlawful sale" of alcohol and the injury or death (*Adamy v Ziriakus* [appeal No. 1], 231 AD2d 80, 88 [1997], *affd* 92 NY2d 396 [1998] [internal quotation marks omitted]). Indeed, this Court has found the absence of a "reasonable or practical connection" in circumstances less extraordinary than those here. In *Barry*, we concluded that there was " 'no reasonable or practical connection between the alleged unlawful sale of alcohol' " and the injuries sustained by the plaintiff's 18-year-old son as a matter of law, where the alcoholic beverage vendor sold beer to a 20 year old who hosted a party at which the plaintiff's son became intoxicated (38 AD3d at 1215-1216). When the police were called to the party, the plaintiff's son fled and fell from a cliff at the edge of the backyard (*id.* at 1215). In my view, the extraordinary circumstances presented here far exceed those in *Barry* in determining whether there was a "reasonable or practical connection" between the unlawful sale of alcohol and decedent's death.

The cases relied upon by the majority are distinguishable from this case for the simple reason that they involve circumstances readily embraced by the "reasonable or practical connection" standard. *Bertholf v O'Reilly* (74 NY 509, 511 [1878]) involved a horse that died as a result of being overdriven by the plaintiff's intoxicated son. *Bartkowiak* involved an individual who was stabbed to death by an intoxicated 15-year-old boy who had purchased his last beer five minutes before the stabbing (40 AD2d at 307-308). *Etu v Cumberland Farms* (148 AD2d 821 [1989]) involved the sale of beer to a 15-year-old boy who, upon becoming intoxicated, drove his family's car without permission and died in a one-car accident. Lastly, *Church* involved the unlawful sale of alcohol to a defendant who returned home in an intoxicated condition and shot and killed the plaintiff's decedent when he stopped by the defendant's home (227 AD2d at 817). The common element in those cases is that the intoxicated person directly inflicted some injury upon himself or a third party or, in the *Bertholf* case, a horse.

In contrast, this case involves the intervening actions of three sober individuals who directly altered the course of events beyond any "reasonable or practical connection" to Malbeat's alleged unlawful sale of alcohol to decedent. The Sheriff's Deputy drove decedent from Island Lanes to her mother's home and thus placed her in a position of safety. Decedent's mother permitted decedent to leave the home, dressed in her black witch costume, and to walk along Whitehaven Road on a moonless night. Brennan struck decedent in the roadway and decided to leave her there, injured, unattended and with no indicators that she was there, while he drove from the scene to call 911. The Sheriff's Deputy returned to the scene with the knowledge that a pedestrian was walking on the roadway on a moonless night, and he drove over her in the location where she had been left after being hit by Brennan's vehicle.

Accordingly, I would affirm the order granting those parts of the motion of Malbeat for summary judgment dismissing the fourth cause of action, asserted in plaintiff's individual capacity, for a violation of the Dram Shop Act, and Brennan's cross claim against it on the ground that, under the circumstances presented here, there is no reasonable or practical connection between the alleged unlawful sale of alcohol to decedent and her death (*see Barry*, 38 AD3d at 1215-1216).

HURLBUTT, J.P., CENTRA and GORSKI, JJ., concur with PERADOTTO, J.; CARNI, J., dissents and votes to affirm in a separate opinion.

It is hereby ordered that the order insofar as appealed from is reversed, on the law, without costs, the motion of defendant Malbeat, Inc., doing business as Mallwitz's Island Lanes, is denied in part and the fourth cause of action and the cross claim of defendant Robert E. Brennan against it are reinstated.