ANNA L. BARTKOWIAK, as Administratrix of the Estate of HENRY F. BARTKOWIAK, JR., Deceased, Appellant, *v.* ST. ADALBERT'S ROMAN CATHOLIC CHURCH SOCIETY, Respondent.

Fourth Department, January 18, 1973.

*Condon, Klocke, Ange & Gervase (Joseph F. Gervase, Jr., of counsel), for appellant.*

*Olszewski, Janik & Wierzbicki (John J. Olszewski of counsel), for respondent.*

CARDAMONE, J. The plaintiff, Anna L. Bartkowiak, as administratrix of the estate of Henry F. Bartkowiak, Jr., appeals from the judgment at Trial Term which dismissed her complaint at the close of the plaintiff's evidence.

The action was one for the wrongful death of plaintiff's son, Henry F. Bartkowiak, Jr. The decedent was stabbed to death on July 12, 1969 while attending a lawn fete sponsored by defendant St. Adalbert's Roman Catholic Church Society. His assailant was a 15-year-old boy who allegedly became intoxicated on beer he purchased at the evening social from defendant. Plaintiff's action was based on two theories of liability: (1) negligence and (2) violation of the Dram Shop Act.

A review of the testimony, other than that of the assailant, reveals that the assailant purchased beer from the defendant. He was seen drinking or carrying it and appeared intoxicated at 11:20 P.M. Witnesses testified that the assailant was " wising

around '' all night, acting like '' Mr. Big '' and that while apparently intoxicated he broke one to five light bulbs at about midnight. He had purchased a beer immediately prior to this. During the light-breaking incident decedent was either hit by flying glass or stepped on by his assailant. Decedent thereupon reprimanded him by either a slap or a punch. Assailant then left defendant's premises swearing revenge. Upon his return he was later observed to be drunk before he stabbed decedent at about 12:45 A.M. The incident occurred quickly, with those nearby unaware of what had happened. There were security guards present on the premises.

The assailant testified pursuant to a subpoena served on him by plaintiff's lawyer that he had purchased at least 25 beers from defendant at the stand where the beer was sold, that no one asked him his age and that he was intoxicated when he bought his last beer about five minutes before he stabbed decedent. He further testified that after the light bulb breaking incident he went home and obtained a 10-inch kitchen knife, concealed it in his trousers, returned to the social, purchased more beer and stabbed decedent. He was subjected to direct and cross-examination on all of the events of the evening in question and he acknowledged participation in them.

The trial court properly ruled that section 783 of the Family Court Act prohibited defendant from examining or using the records of Family Court where the assailant had been adjudicated a juvenile delinquent for his criminal act on this occasion. Defendant's counsel sought these records for the purpose of attacking the witness's credibility by reference to prior inconsistent statements which he believed were contained in those records. Defendant's counsel claimed that the assertion of the witness's privilege denied him his full right of cross-examination and moved to have all of the assailant's testimony stricken. The trial court without specifically ruling on this motion referred to it when it granted defendant's motion for a nonsuit at the close of plaintiff's case.

It would have been error to strike this testimony. The broad rule that if for any reason cross-examination becomes impossible (e.g., on account of sickness, death or wrongful refusal to answer) a witness's testimony on direct must be stricken, is accorded great deference in the law. But the rule is not without limitation. Where the refusal to answer or impossibility of cross-examination has not been due to any act or objection on the part of the party who called the witness, the testimony should not be suppressed unless it is clear that the questions

to which answers were refused were material (*Calhoun* v. *Commonwealth Trust Co.*, 124 App. Div. 633). There was no proof, but merely conjecture, of the existence of the alleged inconsistent statements in the Family Court records; nor was it an objection or action by plaintiff which prevented this extension of defendant's cross-examination. The refusal arose out of a statutory privilege accorded the witness. Considering that defendant had full cross-examination of this witness whose credibility was under attack by the very fact of his admitted criminal act in stabbing decedent to death, we find no prejudice to defendant in denying it this tactic in the impeachment process. As Wigmore observed, "But a refusal to answer on a *privileged subject* cannot justify suppressing the direct examination; for the latter is equally liable with cross-examination to be balked by the privilege, and it is a mere accident on which side the privileged topic occurs" (5 Wigmore, Evidence [3d ed.], § 1391, n. 2).

Turning now to defendant's motion for judgment made pursuant to CPLR 4401, such a motion should not be granted where the facts are in dispute or where different inferences might reasonably be drawn from undisputed facts, or where the issue depends upon the credibility of witnesses (*Sadowski* v. *Long Is. R. R. Co.*, 292 N. Y. 448, 454–455). The court cannot properly undertake to weigh the evidence, but must take that view of it most favorable to the nonmoving party (*Wessel* v. *Krop*, 30 A D 2d 764). The test is whether the trial court could find "that by no rational process could the trier of the facts base a finding in favor of the [non-moving party] upon the evidence here presented" (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 245).

Applying this test to plaintiff's cause of action in negligence, we believe that there was sufficient evidence presented regarding the assailant's conduct to create a jury question. We reach this conclusion even without considering the assailant's testimony. When his testimony is taken into account, and we believe it properly should, then, of course, the failure to submit this case to the jury becomes more apparent. The facts reveal that the assailant was boisterous, aggressive and drunk and that during the course of the evening he smashed some light bulbs with a cane. There were security guards present presumably for the purpose of controlling the conduct of those members of the public whom the defendant invited to attend this lawn fete. One in control or possession of the premises has the duty to control the conduct of those permitted or invited to enter upon the

premises and such person in control is required to exercise it for the protection of others. This duty arises when the one in possession knows that he can and has the opportunity to control the third party's conduct and is reasonably aware of the necessity of such control (*De Ryss* v. *New York Cent. R. R. Co.*, 275 N. Y. 85). It imposes upon the one in control of the premises the obligation to prevent an unreasonable risk of bodily harm by reason of the conduct of those present on his property by his invitation and it must be exercised for the benefit of outsiders, licensees or invitees. The failure to control where such a duty has been found to exist has been held to give rise to actionable liability (*Mangione* v. *Dimino*, 39 A D 2d 128, 129–131).

We also conclude that there was sufficient evidence of a violation of the "Dram Shop Act" (General Obligations Law, § 11–101, formerly Civil Rights Law, § 16) to create a jury question. The statute entitles any person injured as the result of an unlawful sale of liquor to an intoxicated person to recover damages caused "by reason of the intoxication" from the party dispensing the liquor (*Mitchell* v. *The Shoals, Inc.*, 19 N Y 2d 338, 341). The proof in this record reveals an unlawful sale of beer to a 15-year-old who was apparently intoxicated. Beer has been held to be "liquor" under the statute (*Matter of Karas* v. *Hostetter*, 29 A D 2d 947). Sale to a minor and sale to an intoxicated person are both unlawful (Alcoholic Beverage Control Law, § 65, subds. 1, 2). This much appears even without the assailant's testimony. In addition, he testified that he had 25 beers that night and was "drunk" when he bought his last one. There may be no liability imposed unless it is shown that the damages suffered arose "by reason of the intoxication". It is sufficient under the statute if some reasonable or practical connection between the unlawful sale and the wrongful death is established. Proximate cause in the conventional common-law negligence action is not required (*Daggett* v. *Keshner*, 284 App. Div. 733, 6 A D 2d 503, affd. 7 N Y 2d 981).

Several evidentiary rulings during the trial deserve comment. Plaintiff's counsel proposed to submit an economist's testimony regarding decedent's projected earnings based on the 26.2 years estimated life expectancy of decedent's mother. The trial court properly excluded this proof. The jury may consider the probable earnings of decedent during his minority over and above his support, clothing and education; the probability of him having sufficient means to support his parents if they are in need; the voluntary assistance which decedent might have given non-dependent next of kin while living, and their prospect of inher-

iting from him at his death (67 N. Y. Jur., Wrongful Death, § 185, and PJI 2:320). Expert testimony is admissible as to a decedent's future prospects when they are not matters within the general knowledge of the jurors (*Zaninovich* v. *American Airlines*, 26 A D 2d 155, 158–159). The reason for the admission of such expert testimony, of course, is necessity (Richardson, Evidence [9th ed.], § 387). Nevertheless, a bare statement of projected earnings expressed in a dollar amount derived from a mathematical formula based on 26.2 years' life expectancy of decedent's mother would be speculative and prejudicial while its probative value on the amount which decedent might actually have contributed is remote and slight (cf. *Paley* v. *Brust*, 21 A D 2d 758).

The trial court further sustained defendant's objections to testimony offered by decedent's father concerning his state of health. In a Dram Shop action there must be proof that the plaintiff was injured in his "means of support" (*Volans* v. *Owen*, 74 N. Y. 526), refuted here by the father's testimony that he was still working. However, it was error to exclude this testimony, because in a wrongful death action the jury may take into account the health and condition of the parent (67 N. Y. Jur., Wrongful Death, § 185; *Bruck* v. *Meatto Trucking Corp.*, 20 A D 2d 521).

The judgment should be reversed and a new trial granted.

GOLDMAN, P. J., DEL VECCHIO, WITMER and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted, with costs to appellant to abide the event.