Allen Murray Myers, J.
The decision herein dated March 16, 1977 is recalled and is amended to read as follows:
At the trial of the defendants for attempted robbery in the second degree, I admitted into evidence, over the strenuous objections of the attorneys for the defendants, the Family Court record of a juvenile delinquency proceeding commenced pursuant to article 7 of the Family Court Act for the purpose of impeaching a defense witness who had been a respondent in that proceeding. The objection was based on section 783 of the Family Court Act, which provides, in pertinent part: "Neither the fact that a person was before the family court under this article for a hearing nor any confession, admission or statement made by him to the court or to any officer thereof in any stage of the proceeding is admissible as evidence against him or his interests in any other court.”
The defendants were convicted.
The defendants moved, on this and other grounds, posttrial, to set aside the verdict. I denied that motion orally from the bench. However, I believe that the issues raised are important enough to warrant this written opinion.
FACTS
The case before me arose out of an alleged attack upon a 64-year-old man by four young men who threw him to the sidewalk and beat him in an attempt to rob him. This took place in the vicinity of 160th Street and Broadway at about 6:35 on a Sunday morning in February. A truck driver who happened to be driving by alerted police officers who were patrolling the area in a police car. Within moments they arrested the alleged attackers at the scene.
Vincente O. (Anonymous), one of the arrested attackers, was 15 years of age. A juvenile delinquency proceeding was there *779 fore instituted against him. The other three were indicted and charged with two counts of attempted robbery in the second degree and attempted grand larceny in the third degree. One of the three indicted defendants, Arcadia Checo, absconded prior to the commencement of the trial. The remaining two defendants, Peter Johnson and Feliciano Diaz, proceeded to trial.
The crux of the defense was that the defendants were innocent bystanders to the attack which was committed solely by Checo who, they claimed, was a total stranger to them. In support of this defense, the defendants called Vincente O. as a witness. He was then 16 years old. He testified that he too was an innocent bystander; he saw Checo lying on top of the elderly man, beating him; he did not know Checo and he hardly knew the two defendants. He emphatically denied having been with the defendants that Sunday morning. As a matter of fact he testified that he had been "making out” with a girl in the lobby of a nearby building from 1:00 a.m. to 6:00 a.m. without stopping for food, drink or the bathroom.
In answer to a question by defendant Diaz’ attorney as to what had happened to his case in the Family Court, the witness answered, "It was dismissed.”
ADMISSIBILITY OF THE FAMILY COURT RECORD
At the request of the prosecution, I issued a subpoena for the Family Court file of Vincente O. which was promptly produced (see Family Ct Act, § 166). Only after I had examined the file in camera did I admit it into evidence.
The file contained a petition, an order entitled, "Determination of Facts Upon Fact Finding Hearing” and another order entitled, "Order Dismissing Petition.” The purpose of a fact-finding hearing in the Family Court is "to determine whether the respondent did the act or acts alleged in the petition which, if done by an adult, would constitute a crime” (Family Ct Act, § 742). If the fact-finding hearing has been terminated by a positive finding, the Family Court Act provides for a dispositional hearing, which is defined as "a hearing to determine whether the respondent requires supervision, treatment or confinement” (Family Ct Act, § 743).
In the case of Vincente O., the petition accused him of: "acting in concert with 3 males also apprehended & before the Criminal Court, did forcibly attempt to steal personal property from the Complaining Witness, Anthony Gondar, by knocking *780 him to the ground, punching and kicking him about the face & body. In furtherance of said attempted robbery, Respondents with intent to cause serious physical injury to complainant, did cause such injury, to wit: a broken nose and other facial injury requiring medical treatment at Columbia Presbyterian Hospital.”
The accusatory language in the petition against Vincente O. and in the instant robbery count are substantially the same.
In the Family Court, an order entitled "Determination Upon Fact Finding Hearing” was entered by Judge Bookson, in which he found as follows: "[T]he allegations of the petition having been admitted as to Att. Robbery 2nd * * * the Court determines that the following facts have been established beyond a reasonable doubt: On Admission
1. That the Respondent on or about 2-8-76 at 0635 hrs. at West 160th St. & Broadway, New York, N. Y. did an act which, if done by an adult would constitute the crime of Attempted Robbery 2nd in that the Respondent at said time and place did act as alleged in petition.”
After entering the order on March 19, 1976, Judge Bookson adjourned the case in contemplation of dismissal to September 3, 1976, when Judge Dembitz dismissed the petition. The Family Court Act (§ 749, subd [a]) permits "an adjournment of the proceeding, for a period not to exceed six months with a view to ultimate dismissal of the petition in furtherance of justice.” This device permits a Judge to avoid a finding of juvenile delinquency if he believes that such a finding might be an obstacle in the rehabilitation of a juvenile.
I assume that the ultimate dismissal of the proceeding is what Vincente O. was referring to when he said his case in the Family Court was "dismissed”. While his answer was technically correct, it had the effect of misleading the court and jury into believing that the witness had been tried in the Family Court on the merits and had been found not guilty of the very same charges brought against the defendants in the case at bar and on the very same defense. The only purpose of bringing out on direct examination the fact that the case against him had been dismissed in the Family Court was to show that one court had already heard the evidence and found it insufficient. Thus, his claim of innocence was buttressed and, if he was innocent, so the jury might reason, were his alleged cohorts.
Had the witness not testified on direct examination that the *781 case against him in the Family Court had been dismissed, I would not have subpoenaed the Family Court records. But once the witness so testified, it was only fair to grant the District Attorney’s application to subpoena and inspect the Family Court records in camera to determine the truthfulness of that testimony.
It was only after I found the admission by the witness, confirmed by a finding of the Family Court which directly contradicted the thrust of his testimony at this trial, that I allowed the Family Court records to be admitted into evidence.
Although the statutory privilege relating to juvenile delinquency proceedings should be protected, this statutory privilege, as well as constitutional privileges generally, may be waived (see Johnson v Zerbst, Warden, 304 US 458). Furthermore, a privilege may not be used as both a sword and a shield. Thus, the Court of Appeals has held: "It [the privilege against self incrimination] can be waived by the person offering himself as a witness. When the privilege is so waived the person becomes subject to cross-examination the same as any other witness examined in the case * * * A person cannot waive his privilege under the constitutional provisions and give testimony to his advantage, or the advantage of his friends, and at the same time and in the same proceeding assert his privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends” (People v Cassidy, 213 NY 388, 394).
In this case the witness was put on the stand by the defendants to testify as to the facts in issue. Those very facts were in issue in the juvenile delinquency proceeding. The witness appeared voluntarily and was in no way hostile to the defendants. On direct examination he testified that he had been the subject of a juvenile delinquency proceeding and that his case was dismissed. His testimony thus effected £ waiver of his right to avail himself of the privilege granted by section 783 of the Family Court Act.
The case of Bartkowiak v St. Adalbert’s R. C. Church Soc. (40 AD2d 306), while informative as one of the few cases dealing with the nature of the privilege afforded by section 783 of the Family Court Act, did not reach the issue presented here. Bartkowiak was a civil action for damages based upon claims of negligence and violation of the Dram Shop Act. Plaintiff subpoenaed the juvenile who had killed the plaintiff’s *782 intestate after consuming a number of bottles of beer. That witness had previously been adjudicated a juvenile delinquent in the Family Court based upon the acts in question. He acknowledged his participation in the murder on both direct and cross-examination.
In Bartkowiak the defense sought to examine Family Court records in the hope of finding some prior inconsistent statement with which to impeach the witness’ credibility. The trial court did not inspect the Family Court records and, because it dismissed the complaint on other grounds, did not reach the merits of the application to inspect the Family Court records.
The Appellate Division, in reversing, noted the general rule that a witness’ direct testimony must be stricken when "questions to which answers were refused were material” (Bartkowiak v St. Adalbert’s R. C. Church Soc., supra, pp 308-309). This was in accord with the principle that a witness cannot thwart proper cross-examination directed at material facts testified to on the direct examination. The Appellate Division noted, however, that there had been no showing of any probability of an inconsistent statement in the Family Court records.
While it may be said, therefore, that Bartkowiak upheld the privileged status of the Family Court records, that case is clearly not controlling. Here, there was reason to believe that the defense was turning the shield of the privilege into a sword with which to offer false testimony with impunity. My in camera inspection showed this to be the fact. At that point the false implication created by the witness’ testimony could not be permitted to stand unimpeached.
As Judge Weinfeld said in referring to one adjudicated a youthful offender in a case in which a similar statutory privilege was involved: "This is not to say that a witness previously adjudged a Youthful Offender may falsely be vouched for to a jury as a saint when in fact he is a sinner” (United States v Fay, 240 F Supp 848, 850).
REHABILITATION OF THE WITNESS
After the Family Court records were introduced into evidence, the defendants sought an adjournment in order to recall the juvenile or other witnesses in an attempt to explain the inconsistency evidenced by the Family Court records (see Richardson, Evidence [10th ed], § 523). I asked for an offer of proof and then based on that offer, I denied the application. *783 Counsel stated they wanted to determine whether the admission in the Family Court was in the nature of an Alford plea, whether the admission was in fact made or perhaps whether there was some other reason for the admission.
To allege that the Family Court admission might have been in the nature of an Alford plea demonstrates a complete misconception of the nature of such a plea. In North Carolina v Alford (400 US 25, 37) the Supreme Court of the United States held: "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.”
The purpose of the plea is to permit a defendant to plead guilty in order to avoid the consequences of a guilty verdict upon a more serious charge in the indictment even though he cannot admit to a version of the crime consistent with the charge to which he is pleading (see People v Serrano, 15 NY2d 304). The function of the plea is to promote the truth rather than to encourage a person to lie about his guilt. Permitting such a plea should not be construed as a relaxation of "the prohibitions against involuntary or unintelligent pleas” (North Carolina v Alford, supra, p 39).
In an Alford situation, the defendant knowingly pleads guilty, though denying his guilt, in order to avoid conviction on a greater charge. Here, instead, the witness admitted the charge although he did not face the possibility of a conviction of some higher charge. This, then was the direct opposite of an Alford plea. It therefore stretches credulity to suggest that the juvenile’s lawyer would have testified that he encouraged his client to lie to the Family Court, without motive, in the face of all of the prohibitions against such action by a lawyer (see Code of Professional Responsibility, canon 7 DR 7-102).
To permit testimony as to whether the juvenile actually made the admission would be tantamount to a collateral attack on the finding of another court (see People v Tait, 234 App Div 433; People v Michaels, 168 App Div 258).
THE BRUTON ISSUE
The assertion by defendants that the admission of the Family Court records violates the Bruton rule (see Bruton v United States, 391 US 123) is a "red herring”. The Bruton rule is concerned with the right of confrontation. It prevents *784 the People from offering, on its direct case, the confession of codefendant which implicates the defendant. The rule has no application when a codefendant testifies on his own behalf and is then cross-examined with respect to a prior statement implicating the defendant, because in such a situation there is no denial of the right of confrontation (see Nelson v O’Neil, 402 US 622; see, also, California v Green, 399 US 149; People v Sugden, 35 NY2d 453). Here the witness was not only not a codefendant, but it was the defendants themselves who placed him on the stand.