Vernon GREEN, Plaintiff,

v.

P.O. Phillip MONTGOMERY, P.O. Edward Fitzgerald, P.O. Joseph Troy, P.O. Joseph O'Reilly, Sgt. Edward Holmes, Supervisor Daniel Guido, Commissioner of Suffolk County Police Department, Suffolk County Police Department and County of Suffolk, Defendants.

No. 92–CV–0741 (FB).

United States District Court, E.D. New York.

March 25, 1999.

Leonard G. Kapsalis, Siben & Ferber, Esqs., Hauppauge, NY, for Plaintiff.

Robert J. Cimino by Arlene S. Zwilling, Hauppauge, NY, for Defendants.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

Vernon Green ("Green") brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging the use of excessive force, false arrest, false imprisonment and malicious prosecution in violation of his Fourth Amendment rights. The complaint also contains state law claims for false arrest, false imprisonment, malicious prosecution, negligence, and assault and battery. By stipulation dated September 8, 1993, the state law claims for negligence, false arrest, false imprisonment, and malicious prosecution were withdrawn. The County of Suffolk, the Suffolk County Police Department, and Suffolk County Police Officers Phillip Montgomery ("Montgomery"), Edward Fitzgerald ("Fitzgerald"), Joseph Troy ("Troy"), Joseph O'Reilly ("O'Reilly"), and Edward Holmes (collectively "defendants") move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure for dismissal of the entire complaint.

Since the Court determines, *inter alia,* that Green is collaterally estopped from bringing this action by reason of a prior state court adjudication, in what is deemed for the purposes of this motion to be a juvenile delinquency proceeding, defendants' motion is granted and the complaint is dismissed.

## BACKGROUND

This action arises out of events that occurred in connection with Green's arrest in 1988.

On the evening of November 1, 1988, Police Officers Montgomery, Fitzgerald, Troy, and O'Reilly (collectively "the officers"), responded to an anonymous telephone tip that stolen vehicles, including a black Jeep Wrangler, were being kept in the parking lot of an apartment complex on Bay Shore Road in North Babylon, New York. The caller told the police that the vehicles would be moved that night.

That evening, Green, who had just turned fifteen, along with his brother and some friends, drove into the parking lot of the Bay Shore Road apartment complex, pulling up adjacent to a black Jeep Wrangler. Along with a companion, he got out of his car and into the Wrangler. About this time, the officers drove into the parking lot, blocking the exit with their vehicles. The officers got out of their cars and pursued Green and the others in the parking lot.

At this point the officers' version of the facts differs greatly from those asserted by Green. Green claims that, without provocation, Troy and Montgomery began firing at him as the Jeep was rolling to a halt. The officers claim that when they tried to make an investigatory stop of Green, he drove the Jeep directly at Montgomery, and Troy and Montgomery then shot him in the head.

Green was apprehended, and later indicted by a Grand Jury for attempted murder in the second degree, attempted assault in the first degree, reckless endangerment in the first degree, grand larceny in the third degree, and criminal possession of stolen property in the third degree. Following a bench trial in the Supreme Court of the State of New York, Suffolk County, the court found in favor of Green on the charges of attempted murder, assault, and grand larceny, and against Green on the reckless endangerment and criminal possession of stolen property charges. The parties disagree, however, as to whether Green was convicted for these crimes, or adjudicated a juvenile delinquent. In this regard, the "Sentence and Commitment" states that Green was "convicted of/adjudicated a Juvenile Delinquent," *Plaintiff's Statement Pursuant to Local Rule 56.1, Ex. F.* However, the judge who presided over the trial refers to Green as having been "convicted, following a bench trial," in an order denying the release of Grand Jury testimony regarding the indictment. *Defendants' Reply Affirmation, Ex. B.*

## DISCUSSION

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995)). The Court will assume for the purposes of this motion that Green was adjudicated a juvenile delinquent. *See Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999) ("the district court must view the evidence in the light most favorable to the non-moving party").

### A. Excessive Force Claim

The defendants argue that Green's previous adjudication of juvenile delinquency on the charge of reckless endangerment mandates a finding that the officers' shooting of Green was not constitutionally unreasonable. The Court agrees.

### 1. Collateral Estoppel

Even though this is a federal proceeding, and Green's adjudication was in a state court, federal courts must give "a state court judgment ... the same preclusive effect ... as the judgment would

have had in state court." *Burka v. New York City Transit Auth.,* 32 F.3d 654, 657 (2d Cir.1994) (*citing Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Under New York law, if an issue is " 'clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same,' " that party is barred by collateral estoppel from relitigating the same issue. *Burgos v. Hopkins,* 14 F.3d 787, 792 (2d Cir.1994) (quoting *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984)).

The Supreme Court has expressly applied this basic rule of law to bar § 1983 litigation. *See Allen v. McCurry,* 449 U.S. 90, 102, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Allen,* the Court stated that:

[t]here is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather have not been engaged in at all.

*Allen,* 449 U.S. at 104, 101 S.Ct. 411. *See also Burks v. Jakubowski,* 837 F.Supp. 48, 52 (N.D.N.Y.1993) (citing *Allen* as "squarely [holding] that collateral estoppel applies to a plaintiff in a section 1983 action who attempts to relitigate in federal courts issues already decided against him or her in a state criminal proceeding"); *Mitchell v. Keane,* 974 F.Supp. 332, 340 (S.D.N.Y.1997) (summary judgment granted dismissing a § 1983 claim that officers filed false disciplinary charges of assault against an inmate, when a previous state criminal proceeding convicted that inmate of the assault in question); *Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996) (plaintiff who had pleaded guilty to maliciously attacking a police officer was precluded from bringing a § 1983 action based upon allegations of excessive force arising out of that incident).

■ In order for collateral estoppel to apply, the Court must determine (1) whether there was an "identity of issue" which was necessarily decided in the prior proceeding and is "decisive of the present action" and (2) whether there was a "full and fair opportunity to contest the decision said to be controlling." *Burgos,* 14 F.3d at 792; *see Schwartz v. Pub. Adm'r,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969) (discussing the New York standard).

On the first prong of the collateral estoppel test, the New York State Supreme Court did indeed find that Green posed a grave risk of death to Montgomery, as that was an element of the reckless endangerment charge for which Green was adjudicated a juvenile delinquent. *See* Indictment Number 131–89, Suffolk County Court, January 1989 (Green committed an act of reckless endangerment when "on or about November 1, 1988, in Suffolk County, under circumstances evincing a depraved indifference to human life, [he] recklessly engaged in conduct which created a grave risk of death to another person in that the defendant drove a jeep at Police Officer Philip (sic) Montgomery"); *see also* N.Y. Penal Law § 120.25 (McKinney 1997) ("A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."). Therefore, the fact that Green created a grave risk of death to Montgomery was "necessarily decided" by the state court. This finding is "decisive" of the excessive force issue because officers may use deadly force when confronted with a grave risk of death. *See Tennesse v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Plakas v. Drinski,* 19 F.3d 1143, 1149–50 (7th Cir.1994); *Estate of Jackson v. Rochester,* 705 F.Supp. 779, 784 (W.D.N.Y.1989). The first collateral estoppel prong is therefore satisfied.

Green does not address the second prong of the collateral estoppel test— whether he was given a full and fair opportunity to defend against the charges—because, undoubtedly, he was successful in his defense of the attempted murder, attempted assault and grand larceny charges. The Supreme Court in *McKeiver v. Pennsylvania*, 403 U.S. 528, 533–34, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (quoting *Kent v. United States*, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)), has noted that while a juvenile delinquency proceeding may not necessarily conform to all the requirements of a criminal trial, it "must measure up to the essentials of due process and fair treatment." Thus, the juvenile must be afforded "the rights to appropriate notice, to counsel, to confrontation and cross-examination, and the privilege against self-incrimination. Included, also, is the standard of proof beyond a reasonable doubt." *McKeiver*, 403 U.S. at 532, 91 S.Ct. 1976.

Under New York law, amongst other rights, a juvenile is entitled to be notified of the right to remain silent and the right to counsel, N.Y. Family Court Act § 320.3 (McKinney 1999), the right to a speedy trial, N.Y. Family Court Act § 310.2 (McKinney 1999), the right to the defenses of mental disease or defect, justification, self-defense, duress, entrapment, and renunciation, N.Y. Family Court Act § 303.3 (McKinney 1999), and the right to have the charges against him or her proven beyond a reasonable doubt, N.Y. Family Court Act § 342.2 (McKinney 1999). These rights clearly comport with due process, and Green does not contend that he was deprived of such rights during his court proceeding. He was, accordingly, given a full and fair opportunity to defend against the reckless endangerment charge.

**2. Admissibility of Juvenile Delinquency Proceedings**

Nonetheless, Green argues that because his state proceeding was a juvenile adjudication, he should not be precluded from relitigating whether he created a risk of death to Montgomery because of New York Family Court Act § 381.2 (McKinney 1998), which states that "[n]either the fact that a person was before the Family Court under this Article for a hearing nor any confession, admission or statement made by him to the Court or to any officer thereof in any stage of the proceeding is admissible as evidence against him or his interests in any other Court." Furthermore, he notes that the purpose of juvenile delinquency proceedings is "not to punish a malefactor, but rather to supervise and guide a troubled youth." *Matter of Carmelo E.*, 57 N.Y.2d 431, 456 N.Y.S.2d 739, 740, 442 N.E.2d 1250 (1982); *see also McKeiver*, 403 U.S. at 551–52, 91 S.Ct. 1976 (White, J. concurring) (the protections afforded to juveniles are made in an attempt "not to stigmatize the juvenile delinquent by branding him a criminal"). Therefore, Green concludes that juvenile delinquency proceedings cannot be used to preclude relitigation of the same issues. The Court disagrees.

There are a number of circumstances when a juvenile delinquency adjudication is admissible in a later judicial proceeding. For example, the New York Family Court Act states that "[a]nother court, in imposing sentence upon an adult after conviction may receive and consider the records and information on file with the family court concerning such person when he was a child." N.Y. Family Court Act § 381.2 (McKinney 1998); *see also Tuten v. United States*, 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983) (a conviction of "youth offender" admissible for sentencing purposes).

▮ The privilege protecting the records of a juvenile delinquency proceeding may also be waived if needed to impeach a witness who directly contradicts facts determined in his previous juvenile delinquency proceeding. *See People v. Johnson*, 90 Misc.2d 777, 395 N.Y.S.2d 885, 887 (N.Y.Sup.1977), *rev'd on other grounds*, 78 A.D.2d 298, 434 N.Y.S.2d 389 (1st Dept.

1981). Thus, the court in *Johnson* noted in that regard that "[a]lthough the statutory privilege relating to juvenile·delinquency proceedings should be protected, this statutory privilege ... may be waived." *Johnson*, 395 N.Y.S.2d at 887. *See also State ex rel. Rowland v. O'Toole*, 884 S.W.2d 100, 103 (Mo.Ct.App.1994) (comparing the statutory privilege relating to the confidentiality of juvenile records to that of attorney-client and physician-patient privileges, to conclude that it is waived when the juvenile puts the arrest and detention at issue in a later civil trial).

■ Furthermore, there is an analogous waiver scenario in regard to a provision in the New York Criminal Procedure Law which provides for the mandatory sealing of records relating to the arrest and prosecution of an individual upon the termination of a criminal proceeding in favor of the accused. N.Y.Crim. Pro. L. § 160.50 (McKinney 1999). Similar to the sealing of juvenile delinquency records, that provision "is intended to provide confidentiality and avoid the stigma which might accompany such matters...." *Taylor v. New York City Transit Auth.*, 131 A.D.2d 460, 516 N.Y.S.2d 237, 239 (2d Dept.1987). "However, where a party puts into issue in a civil action elements common both to the civil action and to a criminal prosecution, that party waives the privilege...." *Taylor*, 516 N.Y.S.2d at 239; *see also Kalogris v. Roberts*, 185 A.D.2d 335, 586 N.Y.S.2d 806, 806 (2d Dept.1992) ("The privilege, which is intended to protect the accused, may not be used as a sword to gain advantage in a civil action."); *Abrams v. Skolnik*, 185 A.D.2d 407, 585 N.Y.S.2d 818, 819 (3d Dept.1992) (waiver of the privilege "occurs where the protected individual commences a civil action or proceeding and, in doing so, affirmatively places in issue elements that are common or related to the prior criminal action."); *Gebbie v. Gertz Div. of Allied Stores of New York, Inc.*, 94 A.D.2d 165, 463 N.Y.S.2d 482, 487 (2d Dept.1983) (finding implied waiver of N.Y. Criminal Procedure

Law § 160.50 when the accused puts the underlying facts into issue in a later civil action).

■ Accordingly, the Court concludes that because Green brought a civil action that directly put at issue facts determined in his previous juvenile delinquency adjudication, the adjudication may be used to preclude relitigation of the same facts.

## B. False Arrest, False Imprisonment and Malicious Prosecution

Giving his papers a generous reading, Green also appears to bring claims of false arrest, false imprisonment and malicious prosecution under 42 U.S.C. § 1983 in respect to the charges that were terminated in his favor. He makes no such claims in respect to the charge which did not terminate in his favor, obviously recognizing that the adjudication of culpability precludes all such claims. *See Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986) (adopting in § 1983 litigation the common law rule that regardless of whether the action be false arrest, false imprisonment or malicious prosecution, "plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested"). The rationale for such sweeping preclusion is bottomed on the singular ingredient that each of these claims share in common as constitutional torts, namely, the need to establish the absence of probable cause. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118–19 (2d Cir.1995); *Cameron*, 806 F.2d at 387. "[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." *Cameron*, 806 F.2d at 387 (citing cases).

■ Plaintiff is not precluded from bringing his § 1983 false arrest, false imprisonment and malicious prosecution claims in respect to the acquitted charges simply because he was found culpable on the reckless endangerment charge. *See, e.g., Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir.1989); *Houston v. New York Transit*

*Authority,* No. 93–CV–1291, 1996 WL 173128, at *5 (E.D.N.Y. Apr.10, 1996). He is, however, precluded from bringing these claims because he was indicted on these charges. In New York, "the fact that the Grand Jury returned an indictment against [plaintiff] creates a presumption that his arrest and indictment were procured with probable cause." *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir. 1994). To rebut this presumption, "the plaintiff must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation omitted). This rule has been consistently applied in § 1983 litigation. *See, e.g., Marshall v. Sullivan,* 105 F.3d 47, 54 (2d Cir.1996); *White v. Frank,* 855 F.2d 956, 961–62 (2d Cir.1988); *Carson v. Lewis,* 35 F.Supp.2d 250, 260 (E.D.N.Y. 1999); *Campanaro v. Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *Ferreira v. Westchester County,* 917 F.Supp. 209, 218 (S.D.N.Y.1996); *Dukes v. New York,* 879 F.Supp. 335, 341–42 (S.D.N.Y.1995). Plaintiff has made no attempt to rebut this presumption.

Nor is this a case where the court need be concerned "about the possibility of a prosecutor securing an indictment for an easily provable minor offense and adding to it more serious charges with the hope that proof of probable cause on the lesser charge would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones." *DiBlasio v. City of New York,* 102 F.3d 654, 658 (2d Cir. 1996); *see also Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991). Plainly, reckless endangerment cannot be considered a "minor offense," and grouping this charge with charges of intentional criminal conduct growing out of the same underlying circumstances, can hardly, in this case, be viewed as an inappropriate prosecutorial determination.

1. To the extent that there may still exist any state law claims for assault and battery, which appears not to be covered by the par-

### C. Municipal Defendants

Green contends that the municipal defendants are liable under § 1983 for the actions of the officers, because of a failure to train and supervise the officers. The Court disagrees.

A municipality may be liable under § 1983 for the unconstitutional acts of its employees where the acts in question were carried out in execution of a government policy or custom. *See Thomas v. Roach,* 165 F.3d 137, 145 (2d Cir.1999). However, "[a] claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised ...." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 132 (2d.Cir.1997). Because the Court has found that the actions of the individual defendants did not violate Green's constitutional rights, the claim against the municipal defendants cannot be maintained.

### *CONCLUSION*

The defendants' motion for summary judgment is granted, and the complaint is dismissed.[1]

SO ORDERED.

ties' stipulation, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).