**Vernon GREEN, Plaintiff–Appellant,**

v.

**Phillip MONTGOMERY; Edward Fitzgerald, Police Officer; Joseph Troy, Police Officer; Joseph O'Reilly, Police Officer; Edward Holmes, Sgt.; Daniel Guido, Supervisor; Suffolk County Police Department; and County of Suffolk; Defendants–Appellees.**

**Docket No. 99–7515**

United States Court of Appeals, Second Circuit.

Argued Feb. 15, 2000

Decided May 24, 2000

**54**

Leonard G. Kapsalis, Hauppauge, New York, for Plaintiff–Appellant.

Arlene S. Zwilling, Assistant County Attorney, County of Suffolk (Robert J. Cimino, Suffolk County Attorney, on the brief), for Defendants–Appellees.

Before: KEARSE, CALABRESI, and KATZMANN, Circuit Judges.

CALABRESI, Circuit Judge:

Plaintiff–Appellant Vernon Green brought this § 1983 action alleging, *inter alia*, unlawful use of excessive force and malicious prosecution in violation of various constitutional rights. The district court granted summary judgment for the defendants, holding that a New York Supreme Court determination that Green was a juvenile delinquent who had recklessly endangered the life of Police Officer Phillip Montgomery was entitled to preclusive effect. Given the finding of endangerment, the district court held that defen-

dants were—as a matter of law—justified in using deadly force against Green. The district court further ruled that (1) because Green was indicted by a grand jury on the charges that form the basis for his malicious prosecution claim, there was a presumption that his prosecution was supported by probable cause and (2) Green had failed to overcome that presumption. Green appeals, arguing that under New York law he is not barred from relitigating the determination that he recklessly endangered the life of Officer Montgomery, since that determination occurred in a juvenile adjudication. But, in fact, both the question of whether the protections afforded to juveniles in §§ 380.1 and 381.2 of the Family Court Act apply to non-family court juvenile adjudications and the effects of prior state court juvenile adjudications in a later litigation are significant unsettled questions of New York law. As a result, and because all of the issues raised in this appeal turn on whether Green is precluded from challenging the reckless endangerment finding, we certify.

## A. BACKGROUND

The following facts are drawn from the district court's published opinion. *See Green v. Montgomery*, 43 F.Supp.2d 239 (E.D.N.Y.1999). On November 1, 1988, Police Officers Phillip Montgomery, Edward Fitzgerald, Joseph Troy, and Joseph O'Reilly (collectively "the officers"), responded to an anonymous tip that stolen vehicles, including a black Jeep Wrangler, were being kept in the parking lot of an apartment complex on Bay Shore Road in North Babylon, New York. The caller told the police that the vehicles would be moved that night.

The same evening, Green—who had just turned fifteen—along with his brother and some friends, arrived at the parking lot of the Bay Shore Road apartment complex. They pulled up next to a black Jeep Wrangler. Green then entered the Jeep and began to drive it. At about this time, the officers drove into the lot and blocked the

exit with their vehicles. The officers got out of their cars and chased Green and his friends on foot in the parking lot.

At this point, the versions of the story diverge. Green claims that without provocation, Troy and Montgomery began firing at him as the Jeep he was driving rolled to a halt. The officers contend instead that as they tried to make an investigatory stop, Green drove the Jeep at Montgomery, causing Montgomery and Troy to shoot.

Green, who was wounded in the head by the officers' fire, was arrested and indicted by a grand jury for attempted murder in the second degree, attempted assault in the first degree, reckless endangerment in the first degree, grand larceny in the third degree, and criminal possession of stolen property in the third degree. Following a bench trial in the Supreme Court of New York, the court found in favor of Green on the charges of attempted murder, assault, and grand larceny, and against Green on the reckless endangerment and criminal possession of stolen property charges. The Supreme Court's commitment order stated that Green had "been convicted of/adjudicated a Juvenile Delinquent for the crime[ ] of Reckless Endangerment 1st Degree ... in full satisfaction of [the] Indictment." Jt.App. 439.

Green subsequently filed this § 1983 action, alleging the use of excessive force, false arrest, false imprisonment, and malicious prosecution in violation of his Fourth Amendment rights. His complaint also contained state law claims for false arrest, false imprisonment, malicious prosecution, negligence, and assault and battery. By stipulation, all the state law claims with the exception of assault and battery were withdrawn.

The defendants moved for summary judgment on the remaining claims. Finding that the state court's determination that Green had recklessly endangered Montgomery's life precluded relitigation of that issue, the district court held that, as a matter of law, the defendants were justi-fied in using deadly force against Green. As to the other federal claims, the court ruled that Green had failed to overcome the presumption of probable cause that arose from his indictment by a grand jury. The court therefore granted defendants' motion for summary judgment on all of Green's federal claims and refused to exercise supplemental jurisdiction over any of the remaining state law claims. Green appeals the district court's grant of summary judgment with respect to his § 1983 claims for excessive force and malicious prosecution.

## B. DISCUSSION

 Federal courts give state court judgments the same preclusive effect that they would have in the courts of that state. *See Colon v. Coughlin,* 58 F.3d 865, 869 n. 2 (2d Cir.1995). Under New York law, collateral estoppel will apply only "if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Id.* at 869. The party alleging issue preclusion has the burden of showing that the identical issue was decided in the prior proceeding, while the party opposing preclusion has the burden of showing an absence of a full and fair opportunity to litigate that issue. *See id.* Each of the issues raised in this appeal turns on the resolution of the question of whether, under New York law, Green's state court proceedings are entitled to preclusive effect.

### i. Excessive Force

In state court, Green was accused, among other things, of reckless endangerment. According to Green's indictment, he committed that crime when, "on or about November 1, 1988, in Suffolk County, under circumstances evincing a depraved indifference to human life, [Green] recklessly engaged in conduct which creat-

ed a grave risk of death to another person in that the defendant drove a jeep at Police Officer Philip [sic] Montgomery." Jt. App. 21; *see also* N.Y. Penal Law § 120.25 (McKinney 1998) ("A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."). The district court held that, because the state court had found Green guilty of reckless endangerment beyond a reasonable doubt, it had necessarily decided an issue that prevented him from prevailing in his suit against the officers for excessive force. *Cf. Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (finding that the use of deadly force is unreasonable where "the suspect poses no immediate threat to the officer and no threat to others").

Green does not dispute that a determination that he created a grave risk of death to Montgomery by driving the jeep at him would preclude a finding of excessive use of force on the part of the officers. Instead, he argues that, because the state court proceeding was a juvenile adjudication, its results cannot be used against him to bar a relitigation of whether he in fact drove the jeep at Montgomery. And he offers testimonial evidence contradicting the version of events presented by the police officers (and apparently accepted by the state court).

In support of his position, Green points to two provisions of the Family Court Act. Section 380.1 states that, "[e]xcept where specifically required by statute, no person shall be required to divulge information pertaining to the arrest of the respondent or any subsequent proceeding under this article." N.Y. Fam. Ct. Act § 380.1(3) (McKinney 1999). Section 381.2 provides that "[n]either the fact that a person was before the family court under this article for a hearing nor any confession, admission or statement made by him to the court or to any officer thereof in any stage of the proceeding is admissible as evidence against him or his interests in any other court." *Id.* § 381.2(1). But New York law on the effect of a juvenile adjudication in a situation such as this, in which the former juvenile defendant has brought the suit that puts into play issues previously decided at his state juvenile proceedings, is nowhere near as clear as Green would have us believe.

Green relies heavily on the case of *Holyoke Mutual Insurance Co. v. Jason B.,* 184 A.D.2d 550, 585 N.Y.S.2d 61 (N.Y.App. Div.1992), in which the Appellate Division held that an insurance company could not use facts found as part of a juvenile delinquency proceeding in order to deny coverage in a suit against the juvenile's parents. *See id.* at 63. The insurance company had brought a declaratory judgment action seeking to deny coverage on the grounds that the juvenile's actions giving rise to the suit were intentional. *See id.* at 62. It argued that the insureds (the juvenile's parents) were collaterally estopped by the juvenile proceeding from challenging the intentional nature of their son's acts. *See id.* Citing § 380.1 and § 381.2, the Appellate Division held that "neither the petition, amended petition, or the order of adjudication and disposition [from the juvenile proceeding] could be admitted in this action as evidence against [the juvenile] or his interests.... [T]he Supreme Court properly refused to apply the doctrine of collateral estoppel...." *Id.* at 63 (citation omitted).

The district court in the case before us implicitly distinguished *Jason B.,* however, and held that, by bringing a § 1983 suit based upon factual matters decided in the state proceeding, Green had—unlike the juvenile in *Jason B.*—implicitly waived his right not to have that juvenile proceeding used against him. In support of its distinction, the district court noted a series of exceptions to the rule that juvenile proceedings may not subsequently be used against the interests of the juvenile defendant.

First, it observed that the Family Court Act allows a court sentencing an adult for a crime to look to that adult's juvenile record in determining the proper sentence. *See* N.Y. Fam. Ct. Act § 381.2(2). Second, citing an opinion of a New York Supreme Court, the district court noted that the use of a juvenile trial had there been upheld to impeach the testimony of the juvenile defendant. *See People v. Johnson,* 90 Misc.2d 777, 395 N.Y.S.2d 885, 887–88 (N.Y.Sup.Ct.1977), *rev'd on other grounds,* 78 A.D.2d 298, 434 N.Y.S.2d 389 (N.Y.App. Div.1981). Finally, the district court pointed out that an analogous privilege under New York law was deemed waived when a plaintiff sought to use that privilege as a sword in a subsequent civil action. (Thus, while New York Criminal Procedure Law § 160.50 calls for the record of a criminal proceeding to be sealed whenever the defendant is acquitted, *see* N.Y.Crim. Proc. Law § 160.50(1) (McKinney Supp.1999–2000), New York courts have held this privilege waived when an acquitted defendant "commences a civil action and affirmatively places the information protected by CPL 160.50 into issue." *Kalogris v. Roberts,* 185 A.D.2d 335, 586 N.Y.S.2d 806, 807 (N.Y.App.Div.1992).)

The district court's reading of New York law, however, is no less clouded by uncertainty than the interpretation that Green urges us to accept. As an initial matter, the district court's reliance on the statutory exception—for adult sentencing—to the juvenile privilege is misplaced. Section 380.1 states that "[e ]xcept where specifically required by statute, no person shall be required to divulge information pertaining to the arrest of the respondent or any subsequent proceeding under this article." N.Y. Fam. Ct. Act § 380.1(3) (emphasis added). But § 381.2 of the Family Court Act supplies the requisite specific statutory exception with respect to adult sentencing. Accordingly, the use of juvenile records in adult sentencing does not help us decide whether a *non-statutory* exception *also* exists that would allow courts to look into the juvenile records of plaintiffs in subsequent civil suits.

Similarly, *Johnson* provides only a weak foundation for the district court's position. While *Johnson* does indeed say that the record of a juvenile proceeding may be used to impeach the subsequent testimony of the juvenile on specific issues, *Johnson* is just one case from one New York Supreme Court. Other, similar, cases appear to say the opposite. *See, e.g., Bartkowiak v. St. Adalbert's Roman Catholic Church Soc'y,* 40 A.D.2d 306, 340 N.Y.S.2d 137, 140 (N.Y.App.Div.1973) (holding that the trial court properly refused to let a defendant in a civil case open the juvenile record of a witness for the plaintiff whose testimony in the civil case involved matters adjudicated in that juvenile proceeding); *cf. Murphy v. City of New York,* 273 A.D. 492, 78 N.Y.S.2d 191, 194 (N.Y.App.Div.1948) (per curiam) (holding that a finding of juvenile delinquency cannot be used to impeach the credibility of a witness in an unrelated civil action).

Finally, although the New York cases are clear that a party otherwise protected by a § 160.50 sealing of records can waive that protection by commencing a civil action and placing protected information into issue, *see Kalogris,* 586 N.Y.S.2d at 807; *Taylor v. New York City Transit Auth.,* 131 A.D.2d 460, 516 N.Y.S.2d 237, 239 (N.Y.App.Div.1987), the same reasoning does not necessarily apply to juvenile adjudications. It is true that the motivation for § 160.50 appears to be the protection of an acquitted defendant from the stigma of having been accused of a crime and put on trial, *see Kalogris,* 586 N.Y.S.2d at 807, and that a party who voluntarily initiates a civil action that dredges up the issues covered up by § 160.50 can therefore be viewed as having waived the protective veil of privacy that the law affords. In other words, "[the § 160.50] privilege, which is intended to protect the accused, may not be used as a sword to gain advantage in a civil action." *Id.* And it is also true that the sealing of juvenile proceedings is based

on an analogous desire to protect underage offenders from stigma. *Cf.* N.Y. Fam. Ct. Act § 301.1, Practice Commentaries ("Historically, the purpose of the juvenile justice system has been to rehabilitate children...."). As a result, the district court's analogy with § 160.50 is appealing. But it remains no more than an analogy. And there are many possible reasons why, when considering a rule of implied waiver of privacy protections, New York might choose to treat juvenile adjudications differently from adult criminal proceedings and to provide the former with stronger protections than it affords the latter.

Moreover, while a few New York cases can be read to support the district court's position, no *authoritative* New York case does so squarely. Thus, in *Taylor*—a case involving "infant plaintiffs" who had been acquitted in a prior criminal proceeding and who subsequently sued the Transit Authority for false arrest and malicious prosecution—the Appellate Division ordered the plaintiffs to authorize the defendants to unseal the records of the criminal proceeding, because "[t]he material concerning the arrest and prosecution of the infant plaintiffs is clearly relevant to the issues raised by the false arrest and malicious prosecution claims." *Taylor*, 516 N.Y.S.2d at 239. In doing so, the court expressly found that "[t]he plaintiffs, by bringing this civil action, have waived any privilege to keep these records secret from the defendant." *Id.* But the plaintiffs in *Taylor*—even though juveniles—were prosecuted in "criminal proceedings," and the trial did not result in any juvenile adjudication.

Similarly, *State Farm Fire & Casualty Co. v. Bongiorno*, 237 A.D.2d 31, 667 N.Y.S.2d 378 (N.Y.App.Div.1997), does not settle the issue. In that case, Bongiorno had been adjudged a "youthful offender" after assaulting another individual.[1] *Id.* at 379. According to New York law, the records of an adjudication declaring someone to be a "youthful offender" are automatically sealed. *See* N.Y.Crim. Proc. Law ·§ 720.35(2) (McKinney Supp.1999–2000). When the victim sued Bongiorno, Bongiorno's insurance company sought to open the records from his "youthful offender" proceeding in order to determine whether he ·was covered by the policy. *See Bongiorno*, 667 N.Y.S.2d at 379–80. The Appellate Division ruled against the company and held that a person adjudged a "youthful offender" could not be compelled to divulge the content of his confidential records. *See id.* at 381–82. It then went on, however, after citing the § 160.50 cases, to suggest in dicta that the result would have been different if Bongiorno had commenced "a civil lawsuit putting into issue elements common to both the civil litigation and the prosecution resulting in his adjudication as a youthful offender." *Id.* at 382.

The matter before us is, moreover, complicated by the fact that New York law is also unsettled as to whether the original state court determination that Green had committed reckless · endangerment can properly be ·deemed a juvenile adjudication. Unlike the juveniles in *Taylor*, Green was adjudicated a "Juvenile Delinquent." But his case was tried in the New York Supreme Court and·was not removed to Family Court, ·even after Green's acquittal of the attempted murder and assault charges. *See* N.Y.Crim. Proc. Law §§ 310.85, 330.25. And, perhaps significantly, on several occasions the state court,

---

1. "Youthful offender" status is a status akin to "juvenile delinquent." *See People v. Jeffery B.*, 176 Misc.2d 483, 672 N.Y.S.2d 668, 671 (N.Y.Sup.Ct.1998). Both adjudications are characterized as "civil" rather than "criminal," both require a "finding" in lieu of a "conviction," thus "relieving the accused of the stigma of a criminal conviction," *id.*, and both provide for privacy protections for the accused after having passed through the adjudication. *Compare* N.Y.Crim. Proc. Law § 720.35 *with* N.Y. Fam. Ct. Act § 381.2(1). The difference stems from the age of the accused. "Youthful offender" status applies to defendants aged 16 to 18, *see* N.Y.Crim. Proc. Law § 720.10, while "juvenile delinquent" status applies to children aged 7 to 15, *see* N.Y. Fam. Ct. Act § 301.2(1).

while adjudicating *Green* to be a Juvenile Delinquent, also referred to its disposition of the reckless endangerment charge as a "convict[ion]," a term in tension with Green's alleged status as a juvenile. We have, moreover, found no authority as to whether the protections afforded in §§ 380.1 and 381.2 of the Family Court Act apply to such non-family court proceedings when they result in so ambiguous a conclusion.

### ii. Qualified Immunity

■ We are therefore in substantial doubt on whether the district court's decision was correct under New York law. Appellees argue, however, that we can avoid reaching the state law question because, regardless of the district court's collateral estoppel findings, the appellees were entitled to a summary judgment on the ground of qualified immunity. This argument is unavailing. A qualified immunity defense is established only if (1) the officers' actions did not violate clearly established law, or (2) it was objectively reasonable for the officers to believe that their actions did not violate such law. *See Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996). It is beyond dispute that the right to be free from excessive force has long been clearly established. *See id.* at 91. Thus, if Green raises a genuine issue of material fact as to the propriety of defendants' use of deadly force (i.e., if he adequately disputes whether he posed an immediate threat to the lives of the officers or others), it would follow that he has raised a valid issue of fact with respect to the first branch of the qualified immunity defense.

Nor, under the same circumstances, could the second basis for qualified immunity apply as a matter of law. "The objective reasonableness test is met if 'officers of reasonable competence could disagree' on the legality of the defendant[s'] actions." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). If there is a genuine issue of material fact as to whether Green drove the jeep in a reckless manner at Montgomery, then there is a genuine issue of material fact as to whether officers of reasonable competence could disagree as to the legality of the defendants' actions. If Green drove the jeep in the manner described by *his* witness, then no reasonable officer could find the defendants' actions in firing on Green to be legal, and summary judgment on the grounds of qualified immunity would be inappropriate. *See Estate of Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir.1993). In short, a finding that—under New York law—Green is not barred from relitigating the recklessness of his driving during the incident that resulted in his injury would also appear to preclude a grant of summary judgment for the defendants on the basis of qualified immunity.

### iii. Malicious Prosecution

■ The state law collateral estoppel issue is, moreover, also decisive with respect to the propriety of summary judgment on Green's malicious prosecution claim. In order to establish such a claim under § 1983, "a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding." *Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir.1996). A plaintiff charged with crimes of varying degrees of seriousness, and convicted on the lesser charges, may nonetheless sue for malicious prosecution on the more serious claims that were terminated in his favor. *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir.1991) ("As disorderly conduct is a lesser charge than resisting arrest and assaulting an officer, ... we should not allow a finding of probable cause on this charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior."). Thus, the fact that some of Green's less serious charges (i.e., reckless endangerment and possession of stolen property) were deter-

mined against him does not preclude his suit for malicious prosecution on the more serious claims.

■ Under New York law, the fact that a grand jury indicts a person of a crime creates a presumption of probable cause for the purposes of defending against a malicious prosecution claim. *See Marshall*, 105 F.3d at 54.[2] That presumption may be overcome, however, "by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Id.; see Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994). Green argues that the charges against him were filed in bad faith in an attempt to justify, post hoc, the defendants' unreasonable use of deadly force.

As with the other issues in this case, the sufficiency of Green's evidence to create a genuine issue of material fact concerning his allegation that the indictment for his more serious crimes was undertaken in bad faith turns on whether his assertions concerning reckless behavior are barred by collateral estoppel. If Green is allowed to relitigate the state court determination that he acted recklessly, then he can properly question whether the police officers' use of force was reasonable. And if there is a genuine question as to the officers' reasonableness, then it is possible for Green to adduce evidence that the more serious charges of which he was acquitted were brought against him in order to protect the police officers from liability for excessive force. If, instead, we were to hold that it is settled (by collateral estoppel) that Green had recklessly endangered Montgomery, then it stands to reason that Green cannot colorably argue that the charges were brought against him as an attempt to justify a use of force that needed no justification. In other words, the theory that the charges were brought to justify (after the fact) an otherwise unreasonable use of force cannot be squared with the conclusion that, as a matter of law, that use of force was reasonable.

## C. CERTIFICATION

■ Among the factors justifying certification are the absence of authoritative state court interpretations of the state statute, the importance of the issue to the state and the likelihood that the question will recur, and the capacity of certification to resolve the litigation. The resolution of all the federal questions at issue in this appeal depends on two related prior state-law questions that are unsettled and that will determine whether Green is collaterally estopped from relitigating whether he recklessly endangered Officer Montgomery on the night he was shot.[3] A finding that Green is collaterally estopped would mean the end of his case; conversely, permitting him to relitigate the question of reckless endangerment would allow us squarely to confront the issues of federal law presented in his suit. Finally, both (1) what proceedings resulting from an adjudi-

---

2. The district court relied on this presumption in granting summary judgment on Green's malicious prosecution claims. But federal law of probable cause—not state law—should determine whether a plaintiff has raised a genuine issue of material fact with respect to a § 1983 malicious prosecution claim. We have held, however, that the New York presumption of probable cause, if unrebutted, is sufficient to block a *Bivens* claim for malicious prosecution, *see Bernard v. United States*, 25 F.3d 98, 104–05 (2d Cir.1994), which is also governed by a federal probable-cause standard. In other words, we have adopted the New York presumption as the federal standard.

3. Appellees argue that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), provides an alternative basis for affirming the district court's grant of summary judgment, since a finding that the officers used excessive force would imply the invalidity of Green's conviction for reckless endangerment. We have held, however, that *Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody). *See Leather v. Ten Eyck*, 180 F.3d 420, 423–24 (2d Cir.1999); *Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir.1999). Because it does not appear that Green is presently in state custody, his § 1983 action is not barred by *Heck*.

cation of juvenile delinquency are subject to the restrictions of §§ 380.1 and 381.2 and (2) what use may be made of proceedings subject to those sections are, we believe, questions of importance to the State of New York and are likely to arise again. We therefore seek the guidance of the New York Court of Appeals.

■ Local Rule § 0.27 permits us *nostra sponte* to certify to the state's highest court any "unsettled and significant question of state law that will control the outcome of a case pending before this Court." Local Rules of the United States Court of Appeals for the Second Circuit § 0.27; *see also* N.Y. Comp.Codes, R. & Regs. tit. 22, § 500.17(a) (1999) (permitting certification to the New York Court of Appeals of "determinative questions of New York law ... for which there is no controlling precedent of the Court of Appeals"). Because, applying these rules, we believe certification is appropriate in this case, we certify the following questions to the New York Court of Appeals:

(1) Is the New York Supreme Court's commitment order stating that Green was "convicted of/adjudicated a Juvenile Delinquent for the crime[ ] of Reckless Endangerment 1st Degree" to be treated as the equivalent of a Family Court adjudication of juvenile delinquency for the purpose of §§ 380.1 and 381.2 of the Family Court Act?

(2) By bringing a § 1983 suit that places into question issues that were necessarily resolved by the Supreme Court in its decision that Green recklessly endangered Officer Montgomery, has Green waived any and all rights under New York state law not to have those determinations held against him, with the result that he can be collaterally estopped from relitigating the Supreme Court's findings?

The manner in which we have framed these questions is in no way meant to restrict the Court of Appeals from consid-

ering any state law issues it might wish to resolve in connection with this appeal.

\* \* \* \* \* \*

CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Local Rule § 0.27 of the United States Court of Appeals for the Second Circuit and N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(b), as ordered by the United States Court of Appeals for the Second Circuit.